SCHENKEL & SHULTZ, INC. F/K/A SCHENKEL & SHULTZ, ARCHITECTS, P.A. v.
HERMON F. FOX & ASSOCIATES, P.C.

No. 631A06

(Filed 11 April 2008)

**1. Indemnity— express contractual indemnification—primary contract—flow-down provision of subcontract**

Summary judgment should not have been granted for defendant engineering firm on plaintiff architectural firm's claim for express contractual indemnification arising from a subcontract for defendant to create the structural steel design for a school because genuine issues of material fact existed as to whether the parties intended in their subcontract to incorporate by reference the term of an express indemnification provision found in plaintiff's primary contract with the school board.

**2. Trials— failure to designate an expert—language of scheduling order—summary judgment**

The failure of plaintiff to designate an expert under a scheduling order was not dispositive in light of the language in the agreement and the evidence in the case and would not serve as a ground for granting summary judgment for defendant.

**3. Appeal and Error— assignments of error—summary judgment**

For purposes of an appeal from a trial court's entry of summary judgment for the prevailing party, the appealing party is not required under Rule 10(a) of the Rules of Appellate Procedure to make assignments of error.

Justice HUDSON did not participate in the consideration or decision of this case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 180 N.C. App. 257, 636 S.E.2d 835 (2006), affirming an order dated 25 February 2005 entered by Judge Forrest Donald Bridges and reversing an order entered 9 August 2005 by Judge Timothy Kincaid, both in Superior Court, Mecklenburg County. Heard in the Supreme Court 11 April 2007.

*Hamilton Martens Ballou & Sipe, LLC, by Herbert W. Hamilton, and Kennedy Covington Lobdell & Hickman, LLP, by Kiran H. Mehta, for plaintiff-appellee.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by David G. Redding and Adrianne Huffman, for defendant-appellant.*

TIMMONS-GOODSON, Justice.

We must determine in the present case whether the parties intended in their subcontract to incorporate by reference the terms of an express indemnification provision found in the primary contract. Because we conclude there exist genuine issues of material fact regarding the parties' intent to indemnify, summary judgment was inappropriate. We therefore affirm the decision of the Court of Appeals.

## I. Background

On 24 November 1998, the Charlotte-Mecklenburg Board of Education (Board) contracted with the architectural firm of Schenkel & Shultz, Inc. (Schenkel) to design a vocational technical high school in Mecklenburg County. The "Standard Form of Agreement Between Owner and Designer" (Prime Agreement) signed by the Board and Schenkel provided that Schenkel would retain outside consultants or engineers to perform those aspects of the project for which it did not have in-house expertise. The Prime Agreement includes the following indemnification provision:

12.4  In the event a claim, suit, or cause of action is made against the Owner [the Board] and/or Owner's representatives for any personal injury, including death, or property damage (other than to the work itself), or other loss or damage resulting solely from any negligent act or omission of the Designer [Schenkel] or out of the Designer's breach of this Agreement, the Designer agrees to defend and hold the Owner, its agents, employees, servants, representatives, successors and assigns harmless and indemnified from and against any loss, costs, damages, expenses, attorneys fees and liability with respect to such claim, suit, or cause of action.

Schenkel in turn hired Hermon F. Fox & Associates, P.C. (Fox), an engineering firm, to create the project's structural steel design. The form contract between Schenkel and Fox was produced by The American Institute of Architects and titled "Standard Form of

Agreement Between Architect and Consultant" (AIA Document C141 6th ed. 1987) (Subprime Agreement). Article 1 of the Subprime Agreement, "Consultant's Responsibilities," Section 1 describes the services to be performed by Fox under the Subprime Agreement. Section 1.1.2 provides that:

> Consultant's [Fox's] services shall be performed according to this Agreement with the Architect [Schenkel] in the same manner and to the same extent that the Architect is bound by the attached Prime Agreement to perform such services for the Owner [the Board]. Except as set forth herein, the Consultant [Fox] shall not have any duties or responsibilities for any other part of the Project.

Construction began in the fall of 2000, but by the spring of 2001, project contractors, subcontractors, and consultants documented in correspondence with Schenkel their concerns regarding the integrity of the structural steel components of the project and requested that an independent assessment of the steel design be performed. The alleged steel design defects delayed the project, resulting in cost overruns. On 2 January 2002, the Board formally notified Schenkel of the design flaw allegations and cost overruns, as well as its potential claim against Schenkel for the cost of steel structure corrective work and associated delay costs. Schenkel then notified Fox of its intention to hold Fox responsible for any claim filed by the Board. Subsequent attempts by the parties to resolve the matter out of court were unsuccessful.

On 1 October 2004, Schenkel filed suit in Mecklenburg County against Fox, asserting claims for negligence, professional malpractice, breach of contract, breach of warranty, and indemnity for alleged errors in the project's structural steel design. Fox made a pretrial motion for judgment on the pleadings, which the trial court converted to a motion for partial summary judgment. The trial court granted the motion by Fox and dismissed with prejudice, on statute of limitations grounds, the claims for negligence, professional malpractice, breach of contract, and breach of warranty brought by Schenkel. The trial court also granted subsequent motions by Fox for summary judgment on Schenkel's indemnification claim and on a counterclaim by Fox against Schenkel for breach of contract. The trial court awarded Fox $37,787.50 on its counterclaim. Schenkel appealed from both the trial court's entry of partial summary judgment and the summary judgments dismissing the indemnification claim and granting Fox's counterclaim for breach of contract.

**SCHENKEL & SHULTZ, INC. v. HERMON F. FOX & ASSOCS.**

[362 N.C. 269 (2008)]

The North Carolina Court of Appeals heard the case on 22 August 2006. The Court of Appeals affirmed the trial court's entry of partial summary judgment for Fox on Schenkel's claims of negligence, professional malpractice, breach of contract, and breach of warranty. *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 180 N.C. App. 257, 259, 636 S.E.2d 835, 838 (2006). The Court of Appeals reversed the trial court's order granting summary judgment in favor of Fox on its counterclaim for breach of contract. *Id.* In a divided opinion, a majority of the Court of Appeals also reversed the trial court's order granting summary judgment in favor of Fox on Schenkel's claim for indemnification, concluding that there existed genuine issues of material fact as to whether the contract expressly provided for a right to indemnification. *Id.* The dissenting judge concluded that Fox did not expressly agree to indemnify Schenkel. 180 N.C. App. at 274, 636 S.E.2d at 846 (Tyson, J., dissenting). Alternatively, the dissent concluded that summary judgment was appropriate because Schenkel failed to timely designate an expert pursuant to the trial scheduling order and was therefore precluded from offering expert testimony on the standard of care applicable to Fox's work as structural steel designers, which in turn would prevent Schenkel from establishing the underlying negligence or breach of contract the indemnity provision required. *Id.* at 272, 636 S.E.2d at 845. Fox appealed to this Court on the basis of the dissent.

## II. Analysis

In reviewing an appeal based upon a dissent, we consider only those issues that were a point of dispute set out in the dissenting opinion of the Court of Appeals. *See* N.C. R. App. P. 16(b) ("Where the sole ground of the appeal of right is the existence of a dissent in the Court of Appeals, review by the Supreme Court is limited to a consideration of those questions which are [] specifically set out in the dissenting opinion as the basis for that dissent . . . .").

[1] The central issue in dispute here is whether Fox agreed to indemnify Schenkel in the Subprime Agreement. The Prime Agreement between Schenkel and the Board expressly provides for indemnification against loss arising from negligence or breach of contract. The Subprime Agreement between Fox and Schenkel requires Fox to perform its services "in the same manner and to the same extent that [Schenkel) is bound by the attached Prime Agreement to perform such services for [the Board]." Fox contends this language merely requires it to perform its services in the same manner and to the same

extent as Schenkel must perform its services to the Board, and that the term "services" is defined in the contract as only engineering services. Schenkel responds that the language of the Subprime Agreement is a typical "flow-down" provision in which all the "same rights and obligations of the subcontractor . . . flow from the subcontract up through the general contractor to the owner, and conversely down the same contractual claim." T. Bart Gary, *Incorporation by Reference and Flow-Down Clauses*, 10 Construction Law., Aug. 1990, at 44, 46 [hereinafter Gary]. Schenkel argues that the flow-down provision of the Subprime Agreement incorporates by reference the entire Prime Agreement, including the indemnification provision. We agree that the parties' intent to indemnify is not easily discerned in the present case.

## A. Indemnity Provision

An indemnity contract "obligates the indemnitor to reimburse his indemnitee for loss suffered or to save him harmless from liability." *New Amsterdam Cas. Co. v. Waller*, 233 N.C. 536, 538, 64 S.E.2d 826, 828 (1951). Our "primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply." *Dixie Container Corp. of N.C. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968). The court must construe the contract "as a whole" and an indemnity provision "must be appraised in relation to all other provisions." *Id.* A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law. *See Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973). When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury. *Farmers Bank v. Michael T. Brown Distribs., Inc.*, 307 N.C. 342, 347-48, 298 S.E.2d 357, 360 (1983). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004). Thus, if there is uncertainty as to what the agreement is between the parties, a contract is ambiguous. *Id.*

The Subprime Agreement at issue here incorporates by reference terms of the Prime Agreement. "To incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein." *Booker v. Everhart*, 294 N.C. 146, 152, 240 S.E.2d 360, 363 (1978). Construction industry contracts commonly incorporate terms of the general contract into the subcontract:

> The construction contracting process is characterized by the large volume of documents involved. Incorporating by reference a number of documents into a single document is a typical part of the modern construction contract. Aside from being a matter of convenience, the use of incorporation by reference clauses and flow-down clauses represents efforts to ensure consistency of obligations throughout the various tiers of the contracting process.

Gary at 44; *see generally* 2 Justin Sweet & Jonathan J. Sweet, *Sweet on Construction Industry Contracts: Major AIA Documents* § 17.05[A] at 567 (4th ed. 1999) [hereinafter Sweet]. "The relationship of the prime contract to the subcontract generates contractual attempts for consistency. Obligations can flow down to insure that subcontractors commit themselves to the performance and administrative requirement of the prime contract." Sweet at 567.

We agree with the Court of Appeals that the language of the "flow-down" clause of the Subprime Agreement is ambiguous and that the intention of the parties with regard to indemnification is therefore best left to the trier of fact. *Farmers Bank*, 307 N.C. at 347-48, 298 S.E.2d at 360. Fox asserts that a contractual indemnification provision against negligence must be "unequivocally clear," *see Candid Camera Video World, Inc. v. Mathews*, 76 N.C. App. 634, 636, 334 S.E.2d 94, 96 (1985), *disc. rev. denied*, 315 N.C. 390, 338 S.E.2d 879 (1986), and should also be "strictly construed" against Schenkel, *Hoisington v. ZT-Winston-Salem Assocs.*, 133 N.C. App. 485, 494, 516 S.E.2d 176, 183 (1999), *disc. rev. and cert. improvidently allowed*, 351 N.C. 342, 525 S.E.2d 173 (2000). Thus, contends Fox, if any ambiguity as to indemnity exists in the Subprime Agreement, the court must read such ambiguity in favor of Fox. However, this Court has never held that a standard indemnity provision must be "unequivocally clear." Rather, it is only exculpatory provisions, whereby a party seeks to protect itself from liability arising from its *own* negligence, *Gibbs v. CP&L Co.*, 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965), that this Court has strictly construed:

> Contracts which seek to exculpate one of the parties from liability for his own negligence are not favored by the law. Hence it is a universal rule that such exculpatory clause is strictly construed against the party asserting it. It will never be so construed as to exempt the indemnitee from liability for his own negligence or the negligence of his employees in the absence of explicit language clearly indicating that such was the intent of the parties.

*Hill v. Carolina Freight Carriers Corp.*, 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952) (citations omitted). "There is a distinction between contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts, and contracts of indemnity against liability imposed for the consequences of his negligent acts. The contract . . . of the latter class . . . is more favored in law." *Gibbs*, 265 N.C. at 467, 144 S.E.2d at 400. A standard contract of indemnity, in contrast to an exculpatory provision, "will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties." *Dixie Container Corp.*, 273 N.C. at 627, 160 S.E.2d at 711.

Fox concedes that the Prime Agreement expressly provides for indemnification. Thus, an express agreement to indemnify is present. The ambiguity here arises from the intended scope of the reference in the Subprime Agreement to the Prime Agreement. Whether or not the parties intended to incorporate the express indemnification provision of the Prime Agreement by use of the flow-down provision of the Subprime Agreement is the question here, and one which we conclude to be susceptible to differing yet reasonable interpretations. *See Farmers Bank*, 307 N.C. at 347-48, 298 S.E.2d at 360; *see also Gore v. George J. Ball, Inc.*, 279 N.C. 192, 201, 182 S.E.2d 389, 394 (1971) ("[I]t is for the jury to determine whether a particular agreement was or was not part of the contract actually made by the parties."). The party moving for summary judgment is entitled to such judgment only if he can show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (2007); *e.g.*, *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E.2d 228, 231 (1987). Based on the contract language, we cannot say as a matter of law that Fox had no duty to indemnify Schenkel for liability arising from Fox's steel structure design or breach of contract. Because we conclude that the language of the Subprime Agreement is susceptible to differing yet reasonable interpretations, the one broad, the other narrow, the contract is ambiguous and summary judgment was inappropriate. In order to resolve this ambiguity, the case must be remanded to the superior court for further proceedings. The Court of Appeals therefore did not err in reversing summary judgment on the indemnification claim.

## B. Expert Testimony

[2] Fox argues that, even assuming a right to indemnification by incorporation exists, the indemnification provision gives rise to an

indemnity obligation only when damages result from a "negligent act or omission of [Fox] or out of [Fox's] breach of this Agreement." Fox argues that Schenkel cannot establish the standard of care needed to substantiate a negligent act or a breach of contract absent expert testimony, and thus Schenkel's failure to timely designate an expert to support its claim for indemnity is fatal as a matter of law.

The record indicates that the scheduling order set by the trial court required Schenkel to timely designate its experts, and that failure to comply with the deadlines would result in exclusion of such expert witnesses "absent a showing of excusable neglect for the noncompliance." Schenkel's complaint alleges it is entitled to indemnification by Fox "[t]o the extent that any defects and/or problems associated with the structural steel and/or its design cause[d] damage or economic loss to [Schenkel]." We agree that Schenkel will need to present evidence to establish such "defects and/or problems" (i.e., a breach of care) in the design, as well as a causal connection between Fox's design and the damages incurred. However, we do not agree that Schenkel's failure to timely designate an expert under the scheduling order is fatal to its claim at this juncture. The question of whether Schenkel must designate an expert apart from the fact witnesses in this case and when that designation is required is a matter for the trial court. The record contains numerous letters from project contractors, subcontractors, and consultants expressing their concerns over the inadequacies of Fox's original steel design, as well as evidence that Fox "re-designed" the steel structure in response to such concerns. Whether Schenkel is allowed to establish a breach and causation by using the letters and Fox's actions in response, or by other evidence it may possess, is a matter for consideration by the trial court. By failing to designate an expert witness in a timely fashion, Schenkel may have waived its right to call an expert witness, but in light of the language of the scheduling order permitting noncompliance where excusable neglect is shown and the evidence in the record, the failure to designate an expert is not dispositive of the motion for summary judgment in this case. The issue raised by Fox regarding designation of an expert witness under the scheduling order would therefore not serve as a ground for granting summary judgment to Fox. Accordingly, the Court of Appeals did not err in reversing the trial court's order granting Fox summary judgment.

[3] Finally, Fox argues that Schenkel's failure to assign error to or challenge the summary judgment order with regard to the issue of expert testimony required dismissal of the appeal. We disagree. This

Court has long held, and the law has not been changed, that for purposes of an appeal from a trial court's entry of summary judgment for the prevailing party, the appealing party is not required under Rule 10(a) of the Rules of Appellate Procedure to make assignments of error for the reason that on appeal, review is necessarily limited to whether the trial court's conclusions as to whether there is a genuine issue of material fact and whether the moving party is entitled to judgment, both questions of law, were correct. *Ellis v. Williams*, 319 N.C. 413, 415-17, 355 S.E.2d 479, 481-82 (1987).

## III. Conclusion

We hold the Court of Appeals did not err in reversing the entry of summary judgment in favor of Fox on Schenkel's claim of express contractual indemnification. We therefore affirm the Court of Appeals as to that issue. The remaining issues addressed by the Court of Appeals are not before this Court, and its decision as to those matters remains undisturbed.

AFFIRMED.

Justice HUDSON did not participate in the consideration or decision of this case.