Justice BEASLEY, concurring in part and dissenting in part
The majority today holds that an exculpatory clause in a commercial lease absolves the landlord from liability for his improper construction or oversight of construction of improvements pursuant to a lease modification agreement. In doing so, the majority construes the written contract in favor of the drafter, construes an exculpatory clause in favor **689 of the party benefiting thereunder, and approves of the grant of summary judgment in a case in which multiple genuine issues of material fact have yet to be determined. For these reasons, I must respectfully dissent in part from the majority's opinion.
Plaintiffs' claims against defendants included: (1) negligence against John Sidney Greene (S. Greene), Hardin Creek, Inc. (Hardin Creek), and Hardin Creek Timberframe and Millwork, Inc. (Timberframe); (2) breach of the implied warranty of workmanlike performance against the same defendants; (3) constructive eviction against Hardin Creek; (4) breach of the lease agreement's covenant of quiet enjoyment against Hardin Creek; and (5) unfair and deceptive trade practices against S. Greene and Hardin Creek.
In their motion for summary judgment, defendants alleged that Hardin Creek "was the entity responsible for getting the modifications done" and, therefore, no claim of negligence against S. Greene or Timberframe could lie. Defendants further alleged that there was no privity of contract between plaintiffs and S. Greene, or between plaintiffs and Timberframe and, therefore, no claims for breach of the implied warranty of workmanlike performance could lie against these defendants. Defendants alleged that Hardin Creek "was ready, willing, and able to restore the premises" after the flooding event, but plaintiffs quit the lease before repairs could be made. Therefore, defendant Hardin Creek could not be liable for constructive eviction or breach of the covenant of quiet enjoyment. Finally, defendants argued that paragraph 5(b) of the lease discharged any liability of Hardin Creek to plaintiffs as to all five of the claims brought against it.
The trial court found that paragraph 5(b) was "a complete defense to the claims raised in the Complaint" and that there were no genuine issues of material fact with respect to any of the claims raised in plaintiffs' complaint or the counterclaims raised in defendants' amended answer. The Court further found that plaintiffs' third-party complaint raised the same claims as the original complaint and was "substantively and substantially identical to the proposed Amended Complaint." Based upon those findings, the trial court summarily dismissed all claims against all parties.[1]
*372 **690 Analysis
I. Standard of Review
When the trial court allows or denies a motion for summary judgment, we review that ruling de novo. In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citing Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2017).
"[T]he real purpose of summary judgment is to ... pierce the pleadings and determine whether there is a genuine issue of material fact," Singleton v. Stewart , 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972), in order to "eliminate formal trials where only questions of law are involved." Kessing v. Nat'l Mortg. Corp. , 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). "The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of fact."
**691 Singleton , 280 N.C. at 464, 186 S.E.2d at 403 (citation omitted). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or establish any material element of a claim or defense." Lowe v. Bradford , 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citing Bone International, Inc. v. Brooks , 304 N.C. 371, 375, 283 S.E.2d 518, 520 (1981) ).
II. Scope of Exculpatory Clause
Because the trial court allowed summary judgment solely based on paragraph 5(b) of the lease agreement, this is principally a matter of contract interpretation. "The heart of a contract," i.e., the genuine issue, "is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Gould Morris Elec. Co. v. Atl. Fire Ins. Co. , 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948). When the intent of the parties is clearly expressed in a written contract that contains no ambiguities requiring resort to extrinsic evidence or consideration of disputed facts, the contract may be interpreted as a matter of law. Lane v. Scarborough , 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973). However, when an ambiguity exists, the intention of the parties is a genuine issue of material fact to be determined by the jury, and summary judgment is inappropriate. Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC , 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012) (finding summary judgment improper when parties disputed the meaning of a provision in their contract and construction of the document was required to ascertain their intent).
"An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Id. at 525, 723 S.E.2d at 748 (quoting Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs. , 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) ); see also *373 St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs. , 322 N.C. 77, 366 S.E.2d 480 (1988) (finding dismissal improper when parties' disagreement about extent of insurance waiver provisions and assignment of risk of loss indicated ambiguity). The majority declares that the lease uses "clear and explicit language" which "unequivocally demonstrates the parties' intent to hold each other harmless regarding all liability for damage and loss arising from hazards covered by the insurance obtained for the premises."
But the parties contest the applicability and scope of the subparagraph at issue, and each provides a plausible interpretation of the plain language thereof. The entire provision disputed by the parties reads as follows:
(b) Tenant's Neglect. Subject to the provisions set forth in the following sentence, Tenant shall pay for the cost of any repairs or damage resulting from the negligence or the wrongful acts of his employees, representatives or visitors. However, and notwithstanding any other provision of this lease to the contrary, Landlord and Tenant and all parties claiming under them agree and discharge each other from all claims and liabilities arising from or caused by any hazard covered by insurance on the leased premises, or covered by insurance in connection with the property owned or activities conducted on the leased premises, regardless of the cause of the damage or loss, provided that such cause does not prevent payment of insurance proceeds to landlord under the provisions of the applicable policy.
Defendants argue that, under this provision of the lease, if the hazard is covered by insurance, then all claims and liabilities arising out of that hazard are discharged, regardless of the amount of insurance and regardless of the nature of the claim. Plaintiffs contend that the same language releases each party from liability for "any claim" that is (1) caused by hazard and (2) covered by insurance. The majority opinion adopts defendants' interpretation by zeroing in on the words "all claims ... arising from ... any hazard covered by insurance." In doing so, the majority asserts that the plain reading is that "covered by insurance" modifies "hazard," not "claims," and therefore, if the hazard that caused the damage was covered by insurance, plaintiffs are barred from bringing any claim against defendant landlord related to that hazard. While this is certainly a reasonable interpretation of that language, so too is the interpretation offered by plaintiffs. Because both interpretations of the exculpatory clause are reasonable, a genuine issue of material fact remains, and the task of ascertaining the true intent of the parties at the time of contract formation is one for the jury, not the Court.
Despite asserting that the language is "clear and explicit," the majority goes on to construe that language, and does so in contravention of well-established rules of interpretation by resolving the ambiguity in favor of the drafter, Root v. Allstate Ins. Co. , 272 N.C. 580, 585, 158 S.E.2d 829, 834 (1968) (noting the rule that any "ambiguity in a written contract is to be construed against the party who prepared the instrument" (citing Wilkie v. New York Mut. Life Ins. Co. , 146 N.C. 513, 521, 60 S.E. 427, 430 (1908) ); expressly declining to consider the contract provision in the context of the whole agreement, Jones v. Casstevens , 222 N.C. 411, 413-14, 23 S.E.2d 303, 305 (1942) (stating the rule that **693 "[s]ince the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety" (quotation and citation omitted) ); and, rather than strictly construing the exculpatory clause, giving it the broadest possible interpretation, Hall v. Sinclair Ref. Co. , 242 N.C. 707, 709, 89 S.E.2d 396, 397-98 (1955) (noting that "contracts exempting persons from liability for negligence are not favored by the law, and are strictly construed against those relying thereon"); Hill v. Carolina Freight Carriers Corp. , 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952) (stating that strict construction requires "explicit language clearly indicating that such was the intent of the parties"). The majority also fails to adhere to the principle that, in this procedural posture, we are required to view the evidence in the light most favorable to the nonmovant, the plaintiff lessees. These rules combine to mean that, in this case, any time we are asked to choose between the meaning assigned by or *374 most favorable to defendant landlord (the drafter and party seeking benefit of the exculpatory clause) and the meaning assigned by or most favorable to plaintiff lessees, the latter must prevail for purposes of determining whether summary judgment was appropriate. Not only that, but to give the language the meaning urged by defendants, we must find that it clearly and expressly states the parties intention to exculpate defendant from liability for his own negligence, and is clearly not susceptible to the meaning offered by plaintiffs.
The majority distinguishes the contract provision at issue here from the provision considered by this Court in Winkler v. Appalachian Amusement Co. , 238 N.C. 589, 79 S.E.2d 185 (1953). The majority finds the distinction between the exculpatory language at issue in Winkler and this lease's exculpatory language so significant as to warrant a completely contrary holding. But the underlying reasoning of the holding in Winkler is entirely applicable to the case at bar. There we noted that:
It would be natural for the lessee, who had contracted to keep up repairs, to desire to escape liability for purely accidental fires and for the lessor to be willing to grant that relief, but it would not be natural that the lessor would be willing to release the lessee from damage caused by its own active negligence.
Id. at 596, 79 S.E.2d at 190-91. The same reasoning is applicable here where the liabilities are reversed. It would be natural for the lessor, who had contracted to make a repair, to desire to escape liability for purely accidental hazards and for the lessee to be willing to grant that relief, but it would not be natural that the lessee would be willing to release the lessor from damage caused by the lessor's own active negligence. In Winkler we concluded that the language at issue did not evince a clear **694 intent to go beyond the "natural" contractual bargain by waiving one party's liability to the other for its own active negligence. Id. at 596, 79 S.E.2d at 191. Evidence of that clear intent is necessary because, as the majority correctly notes, we must strictly construe contracts that purport to exempt a party from its own negligence. Hall , 242 N.C. at 709, 89 S.E.2d at 397-98.
I agree with plaintiffs that the broad and expansive language of paragraph 5(b) cannot be read by this Court to explicitly express an intention that the lessor be exculpated from its own active negligence. This argument is not "chameleonic." It is a correct interpretation of this Court's holdings spanning more than sixty years. See, e.g. , Schenkel & Shultz , 362 N.C. at 274-75, 658 S.E.2d at 922 (distinguishing indemnity clauses which may be broadly construed "to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties" from exculpatory clauses which "are not favored by the law" and must be "strictly construed against the party asserting it" (first quoting Dixie Container Corp. v. Dale , 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968), then quoting Hill , 235 N.C. at 710, 71 S.E.2d at 137 ) ); Gibbs v. Carolina Power & Light Co. , 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965) (noting that in "contracts whereby one seeks to wholly exempt himself from liability for the consequences of his negligent acts," both the language of the contract and intent of the parties must be "clearly exculpatory" and will be strictly construed (citing Winkler , 238 N.C. 589, 79 S.E.2d 185 ) ); Dixie Fire & Cas. Co. v. Esso Standard Oil Co. , 265 N.C. 121, 126, 143 S.E.2d 279, 283 (1965) (strictly construing lease provision requiring lessor to make all repairs and declining to exempt lessee from its own negligence thereunder); Hill , 235 N.C. at 710, 71 S.E.2d at 137 (noting the "universal rule" that a clause exempting a person from liability for his own negligence is "strictly construed against the party asserting it"); cf. Hall , 242 N.C. at 709-11, 89 S.E.2d at 397-98 (strictly construing a contract provision which discharged a defendant "from any and all claims, demands and liability for any loss, damage, or injury, ... by reason of any other casualty, whether due to the negligence of [the defendant] or otherwise" and finding the language sufficiently clear and explicit (first alteration in original) ). If a party intends to be released from liability for its own active or passive negligence, it must so state in explicit terms. Hardin Creek did not. I can find no reason why the language at issue here differs so *375 materially from that at issue in Winkler as to require a contrary holding.
The majority also rejects outright plaintiffs' reasonable contention that the exculpatory clause must be interpreted in the context of the whole agreement, particularly with respect to the other provisions of **695 the lease requiring coverage by insurance. The Court of Appeals correctly looked to the entire contract, noting that the phrases in paragraph 5(b)-"any hazard covered by insurance" and "payment of insurance proceeds"-required reference to another paragraph of the lease setting out the parties' intentions as to the required insurance coverages and the assignment of risk between them. Morrell v. Hardin Creek, Inc. , --- N.C. App. ----, ----, 803 S.E.2d 668, 674 (2017). The majority today claims that it cannot look to other provisions of the lease without adding language to the disputed paragraph explicitly referencing the other provision. I can find no support in the law for this reasoning. In fact, the majority's rationale appears contrary to the fundamental law of contracts. See, e.g. , Restatement (Second) of Contracts § 202(2) (Am. Law Inst. 1979) ("A writing is interpreted as a whole ...."); 17A C.J.S. Contracts § 399, at 287 (collecting cases and stating the rule that "[a] contract must be interpreted or considered as a whole, or in its entirety"); R. Lord, 11 Williston on Contracts § 32:1, at 603 (4th ed. 2012) ("Primary rules of interpretation are always used by the courts to determine the meaning of particular words or clauses found in a contract, and the contract as a whole, regardless of whether the parties' writing is clear or ambiguous."). It is not necessary that paragraph 5(b) expressly reference paragraph 8. We need not be directed by the drafter to look at another paragraph. Our rules of construction require that we do so to ascertain the meaning which, as nearly as possible, approximates the parties' intentions at the time of contract formation. Atl. & N.C. R. Co. v. Atl. & N.C. Co. , 147 N.C. 368, 61 S.E. 185, 189-90 (1908) (discussing the need to review contract language in light of the whole agreement). The majority acknowledges that its reading of the disputed paragraph requires reference to "the insurance obtained for the premises" and then refuses to consider the text of the lease setting out what that insurance might be. We are required to construe the language of paragraph 5(b) not as a singular clause, but as a clause contained within a larger paragraph which is part of the whole contract which in its totality expresses the intention of the parties. Determining the intention of the parties requires reference to the entire contract. Again, the task of ascertaining the parties' intention at the time of contract formation is one for the jury, not this Court.
Additionally, I agree with plaintiffs that, by statute, this promise to alter the building cannot include a waiver of liability for negligence[2] because such agreements are explicitly against public policy:
**696 Any promise or agreement ... relative to the ... alteration, repair or maintenance of a building ... purporting to indemnify or hold harmless the promisee, the promisee's independent contractors, agents, employees, or indemnities against liability for damages arising out of ... damage to property proximately caused by or resulting from the negligence ... of the promisee, its independent contractors, agents, employees, or indemnitees, is against public policy and is void and unenforceable.
N.C.G.S. § 22B-1 (2017).[3] Therefore, even if we assume, arguendo, that the parties originally *376 intended to discharge the lessor from liability for his own negligence, to the extent that the agreement for the alteration of the building incorporated paragraph 5(b), the exculpatory clause cannot apply to the lessor's promise to alter the building. Our General Assembly has expressly declared such a promise to be void as against public policy, and this Court therefore has no jurisdiction to enforce it. See Associated Mech. Contractors, Inc. v. HDR Eng'g Inc. of the Carolinas , 178 F.3d 1282, 1999 WL 253539, at *5 (per curiam) (unpublished) (4th Cir. 1999) (noting that the statute allows the promisor to indemnify the promissee for damages caused solely by the promisor's negligence, but that defendant's indemnification provision could not be otherwise enforced); accord Jackson v. Associated Scaffolders & Equip. Co. , 152 N.C. App. 687, 690-91, 568 S.E.2d 666, 668 (2002) (applying the statute to hold indemnity clause in construction contract void as against public policy and therefore unenforceable).
Conclusion
I would hold that determination of the full scope of paragraph 5(b) relative to the alteration of the leased premises is a genuine issue of material fact that ought to be submitted to a jury and that the trial court **697 must determine whether, to the extent the exculpatory clause purports to shield defendants from liability for their own negligence in altering the building, it is void as against public policy. I would also hold that paragraph 5(b) is ambiguous as demonstrated by the parties' differing, reasonable interpretations of its meaning; and that resolution of the ambiguity requires determination of issues of fact properly within the province of the jury. Consequently, I would affirm the decision of the Court of Appeals below which held that the trial court erred in allowing the motion for summary judgment in favor of defendant Hardin Creek and remand to that court with instructions to further remand for determination of these issues by the trial court.
I concur in that part of the majority's opinion which affirms the Court of Appeals' decision to remand this matter to the trial court for reconsideration of the liability of the remaining parties; however, I dissent as to that part of the opinion which concludes that the lease provision at issue is a complete bar to plaintiffs' claims against Hardin Creek, and for the same reasons, I also dissent as to that part of the majority's opinion which disavows the Court of Appeals' decision with regard to preservation of defendants' counterclaims.

Although the Court of Appeals did not reach this issue, I am compelled to briefly note the troubling litigation tactics employed by defendants in this case, which plaintiffs did raise on appeal to the Court of Appeals.
Defendants did not fully respond to discovery until being compelled by court order to do so on 26 February 2016, more than one year after discovery requests were first filed. Over the next six weeks, plaintiffs learned that legal title to the leased premises was actually vested in S. Greene's son and that a previously undisclosed agency relationship existed, and their counsel was flooded with an amended answer containing counterclaims, 1,200 pages of new discovery, six scheduled depositions (two of which were expert witnesses that defendants cancelled just days prior), a mediation conference, a motion to strike, and a motion for summary judgment, which defendants noticed for 10:00 a.m. on 25 April 2016 with a request that it not actually be heard until after 4:00 p.m., or the next day, or later in the week, because the parties' previously scheduled mediation was also being held at 10:00 a.m. that same day. Plaintiffs moved to continue the hearing and were being heard on that motion when the trial court abruptly ordered summary judgment, in part sua sponte , for all defendants. Plaintiffs have, by all accounts, prosecuted their claims diligently and in good faith, while defendants have benefited from dilatory and prejudicial tactics.
Rule 6(b) of the North Carolina Rules of Civil Procedure provides that the trial court may, in its discretion and upon a showing of cause, enlarge the time within which any act is required to be done. N.C.G.S. § 1A-1, Rule 6(b) (2017). In deciding whether, in its discretion, to grant a motion for continuance, the chief consideration is whether the grant or denial will be in furtherance of substantial justice. Shankle v. Shankle , 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976). Additionally, we have stated that "it is error for a court to hear and rule on a motion for summary judgment when discovery procedures, which might lead to the production of evidence relevant to the motion, are still pending and the party seeking discovery has not been dilatory in doing so." Conover v. Newton , 297 N.C. 506, 512, 256 S.E.2d 216, 220 (1979). It is clear from the record before us that multiple issues of fact remained to be determined, that plaintiffs had diligently pursued discovery for the preceding nine months, and that plaintiffs reasonably expected to be given an opportunity to flesh out those remaining issues of fact by completing discovery. This Court would certainly have benefited from a more fully developed record. Under these circumstances, I would hold that the trial court abused its discretion in denying plaintiffs' motion to continue.

In addition to the statutory mandate that one who contracts to improve a building may not seek to exculpate himself for negligence relative thereto, the landlord who undertakes to make repairs is also under a duty, implied by law, to do so with care. Bolkhir ex rel Bolkhir v. N.C. State Univ. , 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). Additionally, enforcement of exculpatory clauses between parties whose legal relationship gives rise to special duties is against public policy. See Hall , 242 N.C. at 710, 89 S.E.2d at 398 (recognizing that public policy prohibits a public utility from contracting to discharge its own negligence and that "[t]he limitation is likewise uniformly applied to certain relationships such as that of master and servant" (quoting Miller's Mut. Fire & Ins. Ass'n of Alton, Ill. v. Parker , 234 N.C. 20, 22, 65 S.E.2d 341, 342 (1951) ) ).

The majority contends that the statute is inapplicable because the contract between the parties is not "relative to the design, planning, construction, alteration, repair or maintenance" of a building. This assertion fails, however, to recognize that the damage involved was, at least arguably, caused by the negligent "alteration" of the building by S. Greene who very well may have been acting at the time in his capacity as a licensed general contractor, rather than in his capacity as agent for the landlord. Again, these are genuine issues of material fact more appropriately resolved by a jury.