Golden Triangle #3, LLC v. RMP-Mallard Pointe, LLC, 2020 NCBC 22.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 13580

GOLDEN TRIANGLE #3, LLC,

    Plaintiff and
    Counterclaim
    Defendant,

v.

RMP-MALLARD POINTE, LLC, and
MALLARD CREEK ASSOCIATES
#1, LLC,

    Defendants and
    Counterclaim
    Plaintiffs,

and

RMP-MALLARD POINTE, LLC,

    Third-Party
    Plaintiff,

v.

LEVINE PROPERTIES, INC.,

    Third-Party
    Defendant.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
PURSUANT TO RULE 12(c)**

1.    **THIS MATTER** is before the Court upon Defendants RMP-Mallard Pointe, LLC ("RMP") and Mallard Creek Associates #1, LLC's ("MCA") (collectively, "Defendants") Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (the "Motion"). (ECF No. 22.)

2.    Having considered the Motion, the related briefing, and the arguments of counsel at the hearing on the Motion, the Court **DENIES** the Motion.

*James, McElroy & Diehl, P.A., by John R. Buric, John R. Brickley, and Preston O. Odom, III, for Plaintiff Golden Triangle #3, LLC and Third-Party Defendant Levine Properties, Inc.*

*Lincoln Derr PLLC, by Richard Jeremy Sugg and Tricia M. Derr, for Defendants RMP-Mallard Pointe, LLC and Mallard Creek Associates #1, LLC.*

Bledsoe, Chief Judge.

## I.

## BACKGROUND

3. The Court does not make findings of fact on motions for judgment on the pleadings under North Carolina Rule of Civil Procedure 12(c) and recites only those allegations in the pleadings that are relevant and necessary to the Court's determination of the Motion. *See, e.g.*, *Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952); *Willard v. Barger*, 2019 NCBC LEXIS 43, at *1–2 (N.C. Super. Ct. July 12, 2019).

4. This case involves a potential real estate development project between Plaintiff Golden Triangle #3, LLC ("Golden Triangle" or "Plaintiff") and Defendants RMP and MCA (collectively, the "Parties") to redevelop real property located at the intersection of Fairview and Providence Roads in Charlotte, North Carolina (the "Project"). (Compl. ¶ 9, ECF No. 3.) While there are several agreements between the Parties relating to the Project, including a lease agreement, a memorandum of lease, and various amendments and extensions, (Compl. ¶ 11), the Project-related agreement at issue for the purposes of the Motion is a 2014 Amended and Restated Option Agreement ("Option Agreement") dated December 9, 2014, (Compl. ¶ 10; Stipulated Agreement of the Parties (pgs. 24–292), at *STIPULATED*-000197–000292

[hereinafter "Option Agreement"], ECF No. 25.2; Defs.' Mot. J. Pleadings Pursuant Rule 12(c) [hereinafter "Mot. J. Pleadings"], ECF No. 22).[1]

5.      The Option Agreement imposes various obligations on the Parties, including a requirement that Golden Triangle and RMP investigate the potential rezoning of specific real property, including the "Land" and an abutting parcel of real estate, the "C-Store Parcel," each as more particularly described in the Option Agreement. (Compl. ¶ 12; Option Agreement ¶ 1(b)(i), Ex. A.)  Initial rezoning was approved on or about October 19, 2015.  (Answer, Countercl. & Third-Party Compl. ¶ 85 [hereinafter "Answer"], ECF No. 9.)  A site plan amendment to the zoning approval was filed in 2016, (Answer ¶ 86), and approved on or about January 17, 2017, (Compl. ¶ 15; Answer ¶ 90).  Appeal rights concerning the rezoning expired a month later. (Compl. ¶ 15.)

6.      The Option Agreement provides that upon obtaining final, non-appealable rezoning of the Land and C-Store Parcel ("Rezoning"), Golden Triangle and RMP "shall form [an] LLC and become members as provided in Paragraph 1(d) [of the Option Agreement]."  (Option Agreement ¶ 1(b)(i).)

7.      Paragraph 1(d) includes the following obligations:

[T]he Parties promptly (and not later than thirty (30) days after the successful Rezoning . . . ) shall cause Articles of Organization for the LLC to be filed with the office of the Secretary of State of North Carolina, and both Parties shall sign the Operating Agreement attached hereto as Exhibit C and incorporated herein by reference (the "Operating Agreement"), make the contributions of the C-Store Parcel (including an assignment of any leases related thereto), Land and Property (as defined

---

[1] The Parties first entered into an option agreement concerning the Project on March 15, 2013. (Compl. ¶ 9; Stipulated Agreement of the Parties (pgs. 24–292), at *STIPULATED-000183–000196*).

in the Purchase Agreement), and other capital to the LLC as and when required in the Operating Agreement and become members of the LLC.

(Compl. ¶ 14; Option Agreement ¶ 1(d).)

8.    With respect to the obligation to contribute capital outlined in Paragraph 1(d), the Option Agreement further provides as follows:

> Notwithstanding anything contained in this Agreement, the parties hereto agree that the capitalization of the LLC as set forth in this Paragraph 1(d) shall not occur until the closing of the Project Financing (as defined below) at which time the KeyBank Loan and the BB&T Loan or the then outstanding loans secured by (a) the Apartments and leasehold interest in the Ground Lease or (b) the Land, shall be contemporaneously paid in full.

> With respect to the initial financing obtained for the LLC (the "Project Financing"), the LLC will use its best efforts to obtain either construction financing (if the C-Store Parcel and Land are rezoned and a new retail development is pursued) or permanent financing (if the Apartments are renovated) with a loan-to-value of not less than seventy-five percent (75%).

(Option Agreement ¶ 1(d).)

9.    A representative of Golden Triangle caused the Articles of Organization for the LLC (named "Carmel Providence, LLC") to be filed with the North Carolina Secretary of State within thirty days of Rezoning on August 30, 2016.  (Compl. ¶¶ 14(a), 16; Option Agreement Ex. C.)  RMP has not signed the Operating Agreement attached to the Option Agreement, (Compl. ¶ 19), the result of which, Golden Triangle alleges, is that Project Financing as contemplated by Paragraph 1(e) cannot be secured, (Compl. ¶ 22).  In any event, Project Financing has not closed, and RMP has not contributed any capital to the LLC.  (Compl. ¶¶ 21–22.)

10.     Paragraph 1(e)(i) of the Option Agreement provides that if "(a) the Rezoning has been obtained and (b) RMP fails to comply with its obligation to form and contribute capital to the LLC as set forth in Paragraph 1(d) above, MCA grants to [Golden Triangle] the exclusive right, privilege and option (the "Levine Option") to purchase the Land[.]"  (Option Agreement ¶ 1(e)(i).)  This specific provision is the subject of Plaintiff's Complaint and Defendants' Motion.

11.     Sometime after RMP declined to sign the Operating Agreement, Plaintiff delivered notice to Defendants of its intent to exercise the Levine Option.  (Compl. ¶ 24.)  MCA denies that Plaintiff has the right to exercise the Levine Option under the Option Agreement and has refused to sell the Land to Plaintiff.  (Compl. ¶ 25.)

12.     On July 10, 2019, Plaintiff filed its Complaint against Defendants, alleging a claim for breach of the Option Agreement, for which it seeks specific performance ordering MCA to sell the Land to Plaintiff, and, in the alternative, for a declaratory judgment determining that Plaintiff properly exercised the Levine Option and that MCA has a legal duty to sell the Land to Plaintiff.  (Compl. ¶¶ 29–41.)  The following day, this case was designated as a mandatory complex business case by the Chief Justice of the North Carolina Supreme Court, (ECF No. 1), and assigned to the undersigned, (ECF No. 2).

13.     Defendants answered the Complaint on September 10, 2019, and filed the Motion on November 25, 2019.  Defendants contend in the Motion that the Court should find as a matter of law that Plaintiff is not entitled to an order compelling MCA to sell the Land to Plaintiff, a declaratory judgment that Plaintiff could or

properly did exercise the Levine Option, or a declaratory judgment that MCA is required to sell the Land to Plaintiff.  (Mot. J. Pleadings.)

14.    The Court held a hearing on the Motion on January 29, 2020, at which all parties were represented by counsel.  The Motion is now ripe for resolution.

II.

ANALYSIS

15.    "A Rule 12(c) motion for judgment on the pleadings is not favored by the law and requires the trial court to view all facts and permissible inferences in the light most favorable to the nonmoving party." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247, 567 S.E.2d 781, 786 (2002) (citation omitted); *see also Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 510, 797 S.E.2d 264, 271 (2017) ("All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974))). "When ruling on a motion for judgment on the pleadings, the trial court 'is to consider only the pleadings and any attached exhibits, which become part of the pleadings.' " *Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 660, 507 S.E.2d 923, 926 (1998) (quoting *Minor v. Minor*, 70 N.C. App. 76, 78, 318 S.E.2d 865, 867, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 558 (1984)). "The Court may also consider documents that are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *S. Envtl. Law Ctr. v. Saylor*, 2019 NCBC LEXIS 60, at *11 (N.C. Super. Ct. Sept. 11,

2019) (citing *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001)).

16. "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *Id.*, at \*10 (quoting *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E.2d 840, 842 (1976)). "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. Rule 12(c) motions "must be carefully scrutinized lest the nonmoving party be precluded from a full and fair hearing on the merits. The movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment." *Id.*

17. Defendants' argument is straightforward: "[t]he plain language of the Option Agreement is clear and unambiguous" and provides "that (a) no capital was to be contributed to the LLC until closing of the Project Financing, and (b) the Levine Option is not triggered unless RMP fails to comply with its obligations to form *and* contribute capital to the LLC pursuant to Paragraph 1(d)." (Defs.' Br. Supp. Mot. J. Pleadings 6 [hereinafter "Br. Supp. Mot."], ECF No. 23.) Defendants read the phrase "form and contribute capital" as identifying two separate obligations–the formation of the LLC and the contribution of capital to the LLC–and the failure of either obligation necessarily precludes Plaintiff's exercise of the Levine Option. Thus,

although Defendants' acknowledge that the LLC was legally formed, they nonetheless contend that the undisputed allegations establish that Project Financing did not close and thus that RMP had no duty to contribute capital and therefore did not do so. Since RMP did not have a duty to contribute capital, Defendants contend that RMP's admitted failure to contribute capital did not entitle Plaintiff to exercise the Levine Option as a matter of law. (Br. Supp. Mot. 7.)

18. Plaintiff's arguments in opposition are similarly straightforward and also rest on the Option Agreement's "clear and unambiguous" language. First, according to Plaintiff, the Levine Option is triggered under Paragraph 1(e) when "RMP fails to comply with its obligation to form and contribute capital to the LLC as set forth in Paragraph 1(d)[,]" which contemplates that Plaintiff may exercise the Levine Option upon the failure of any of RMP's duties in paragraph 1(d). Because RMP admittedly did not contribute capital to the LLC, Plaintiff argues that its right to exercise the Levine Option has been triggered. (Resp. Br. Opposing Defs.' Rule 12(c) Mot. Partial J. Pleadings 9–10 [hereinafter "Resp. Br."], ECF No. 36.) Plaintiff further contends that even if closing Project Financing was a condition precedent to RMP's contribution of capital under the Option Agreement, RMP's refusal to sign the Operating Agreement to assist in obtaining Project Financing "constitutes a subsidiary failure of RMP to comply with its obligation to form and contribute capital to the LLC[,]" (Resp. Br. 1 (internal quotation marks omitted)), and thus cannot impede Plaintiff's right to exercise the Levine Option, (Resp. Br. 10–11).

19.     "Whenever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Certainteed Gypsum NC, Inc. v. Duke Energy Progress, LLC*, 2018 NCBC LEXIS 91, at *8 (N.C. Super. Ct. Aug. 28, 2018) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973)).  "To do so, the Court must first look to the language of the contract and determine if it is clear and unambiguous." *Id.*  "If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citing *Lane*, 284 N.C. at 410, 200 S.E.2d at 624–25).  "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law." *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 568, 500 S.E.2d 752, 755 (1998) (quoting *Lane*, 284 N.C. at 410, 200 S.E.2d at 624).  "[O]ur courts adhere to the central principle of contract interpretation that [t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 824, 778 S.E.2d 308, 312 (2015) (quoting *In re Hall*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011)).

20.     "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012) (quoting *Schenkel & Shultz, Inc. v. Hermon F. Fox &*

*Assocs.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008)). "[I]f there is any uncertainty as to what the agreement is between the parties, a contract is ambiguous." *Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 554 S.E.2d 863, 867 (2001). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *WakeMed*, 243 N.C. App. at 825, 778 S.E.2d at 312 (quoting *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001)).

21. "Whether or not the language of a contract is ambiguous . . . is a question for the court to determine." *W & W Partners, Inc. v. Ferrell Land Co., LLC*, 2018 NCBC LEXIS 52, at *12 (N.C. Super. Ct. May 22, 2018) (quoting *Lynn v. Lynn*, 202 N.C. App. 423, 432, 689 S.E.2d 198, 205 (2010)). "If a court finds a contract ambiguous, the intent of the parties becomes a question of fact." *Certainteed Gypsum NC*, 2018 NCBC LEXIS 91, at *9; *see also Leonard v. Pugh*, 86 N.C. App. 207, 210, 356 S.E.2d 812, 815 (1987) ("Ambiguous contracts must be interpreted by a jury under proper instructions of the law."). "The court must not . . . , under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Stovall v. Stovall*, 205 N.C. App. 405, 410, 698 S.E.2d 680, 684 (2010) (quoting *Lynn*, 202 N.C. App. at 432, 689 S.E.2d at 205).

22. Applying these principles here, the Court concludes that the language contained in Paragraph 1(e)(i) of the Option Agreement concerning "RMP's obligation to form and contribute capital to the LLC as set forth in Paragraph 1(d)" is capable

of more than one reasonable interpretation and thus is ambiguous. For example, as Plaintiff urges, the use of the singular "obligation" permits a reasonable interpretation that RMP's "obligation to form and contribute capital" requires that RMP perform both tasks and that its failure to do either permits Plaintiff to exercise the Levine Option. That said, Paragraph 1(d) involves four tasks, and the Option Agreement does not attempt to identify which tasks involve formation of the LLC, the contribution of capital to the LLC, both, or neither, thus creating ambiguity.

23. Moreover, as Defendants argue, the use of the word "and" in the phrase "form and contribute capital," in the context of the Option Agreement as a whole, permits a reasonable interpretation that the Levine Option is triggered only if RMP fails to *both* form the LLC and contribute capital to the LLC as outlined in Paragraph 1(d). Because it is undisputed that the LLC has been formed through the filing of its Articles of Organization, *see* N.C.G.S. § 57D-2-20(b) ("An LLC is formed at the time the articles of organization filed by the Secretary of State become effective."), the uncertainty as to which provisions under Paragraph 1(d) involve LLC formation and which involve capital contribution become irrelevant under this interpretation of the contract terms.

24. Based on the above, it appears to the Court that the conditions to permit Plaintiff's exercise of the Levine Option in Paragraphs 1(d) and 1(e) of the Option Agreement are uncertain based on the contract's plain terms and capable of several reasonable interpretations. *See, e.g.*, *Schenkel & Shultz, Inc.*, 362 N.C. at 273, 658 S.E.2d at 921 (citation omitted) (finding ambiguity in such circumstances). Based on

this ambiguity, the Court concludes that judgment on the pleadings is improper under Rule 12(c) and that a determination of the parties' intent through an examination of extrinsic evidence, either at summary judgment, trial, or both will be necessary to determine the parties' agreement in Paragraphs 1(d) and 1(e) of the Option Agreement.

25. As a result, the Court concludes that Defendants' Motion should be denied. *See, e.g.*, *Erickson*, 235 N.C. at 657, 71 S.E.2d at 394 (holding "[t]he law does not authorize the entry of a judgment on the pleadings in any case where the pleadings raise an issue of fact on any single material proposition" and collecting cases); *Houpe v. City of Statesville*, 128 N.C. App. 334, 344, 497 S.E.2d 82, 89 (1998) ("Judgment on the pleadings is improper where there exists a material issue of fact[.]" (citing *Hedrick v. Rains*, 121 N.C. App. 466, 468–69, 466 S.E.2d 281, 283, *aff'd per curiam*, 344 N.C. 729, 477 S.E.2d 171 (1996))).

## III.

## CONCLUSION

26. **WHEREFORE**, for the reasons set forth above, the Court hereby **DENIES** Defendants' Motion.

**SO ORDERED**, this the 23rd day of March, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge