IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-127

Filed: 3 November 2015

Wake County, No. 14 CVS 4167

WAKEMED, Plaintiff,

v.

SURGICAL CARE AFFILIATES, LLC, Defendant.

Appeal by plaintiff from order entered 4 August 2014 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 13 August 2015.

*Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, William R. Forstner, and Maureen Demarest Murray, for plaintiff-appellant.*

*Wyrick Robbins Yates & Ponton LLP, by Paul J. Puryear, Jr., Frank Kirschbaum, and Tobias Hampson, for defendant-appellee.*

McCULLOUGH, Judge.

Plaintiff WakeMed appeals from an order of the trial court, granting defendant Surgical Care Affiliates, LLC's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Based on the reasons stated herein, we reverse the order of the trial court.

## I. Background

On 17 April 2014, plaintiff (otherwise referred to as "owner") filed a complaint against defendant (otherwise referred to as "manager") alleging a breach of contract claim. Plaintiff alleged that on or about 1 April 2010, plaintiff and defendant entered

into two contracts: Management Agreement WakeMed Cary Hospital Surgery Department ("Cary Agreement") and Management Agreement WakeMed North Healthplex Surgical Department ("North Agreement") (collectively the "Agreements"). The Agreements provided that defendant would manage the surgical departments at two of plaintiff's facilities for a monthly fee, pursuant to the applicable terms and conditions. The Agreements had an initial term of seven years with successive renewals of three years. Either party could terminate the Agreements upon sixty days' written notice for a material breach, with an opportunity for the breaching party to cure within this period.

The complaint alleged that defendant undertook several duties under the Agreements, "including the express obligation to reduce the costs associated with surgical procedures" at WakeMed. Defendant was required to comply with "Global Performance Standards" ("GPS") which were attached to the Agreements and incorporated by reference as part of the binding contracts. The GPS provided as follows:

> The following criteria shall be used to measure and evaluate the overall performance of the Manager in the Department:
>
> (a) Reduction of average total cost per case adjusted for type of procedure by 5% or greater from pre-Agreement levels (adjusted for inflation), which may include reductions in supply costs per case and reductions in labor costs per case.

> (b)     Improvement of perioperative processes from pre-Agreement levels, including turnaround times, publicly-reported clinical measures and on-time case starts.
>
> (c)     Achievement of reasonably acceptable surgeon and patient satisfaction targets, as measured by a third party vendor mutually agreed upon by the Owner and the Manager.

> The failure by the Manager to satisfy criterion (a) above, or both criteria (b) and (c) above, shall constitute a material breach for purposes of Article I, Section 6 of the Agreement.

Pursuant to Article I, Section 6 of the Agreements, failure to satisfy the GPS constituted a "material breach" of the Agreements. Plaintiff alleged that defendant failed to achieve a 5% reduction in cost per case and instead, the average total cost per case increased during the time defendant served as manager. Defendant also "failed to maintain surgeon satisfaction, surgical volume diminished, operating room turnover rate decreased, and staff departures and turnover increased, all of which were caused by [defendant's] actions and resulted in a significant loss of revenue for [plaintiff.]"

The complaint further alleged that as a result of defendant's material breach, plaintiff terminated the Agreements in 2011. On 10 June 2011, plaintiff provided written notice of breach to defendant, explicitly identifying defendant's failure to satisfy the GPS. The notice of breach permitted defendant to cure the breach within sixty days, but plaintiff alleged that defendant failed to do so. By a letter dated

31 August 2011, plaintiff and defendant mutually agreed that the Agreements had been terminated effective 15 August 2011, "except for a brief period of continued retention of a surgical department manager." The 31 August 2011 letter expressly reserved the right of plaintiff to seek legal and equitable relief against defendant pursuant to Article I, Section 9 of the Agreements. As a result of defendant's breach of contract, plaintiff alleged that it was damaged in excess of $10,000.00.

On 13 May 2014, defendant filed a motion to dismiss plaintiff's complaint based upon insufficiency of process and service of process, failure to state a claim upon which relief can be granted, and in the alternative, for summary judgment on the defense of the statute of limitations only pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(4), 12(b)(5), 12(b)(6), and Rule 56. Defendant argued that pursuant to Rule 12(b)(6), plaintiff failed to state a claim because the Agreements contained an exclusive remedy of contract termination and plaintiff elected to exercise that exclusive remedy in the termination of the Agreements. Defendant further argued that it "did not guarantee that it would achieve any particular operating results for plaintiff" and that plaintiff "explicitly agreed to indemnify and hold harmless [defendant] from any claims arising out of [defendant's] performance" under the Agreements.

A hearing on defendant's motion was held at 24 July 2014 Civil Session of Wake County Superior Court, the Honorable Paul Ridgeway presiding. On

4 August 2014, the trial court entered an order granting defendant's motion to dismiss plaintiff's complaint with prejudice on the theory that plaintiff's claim is "barred by the express language of the contract between the parties[.]"

On 28 August 2014, plaintiff filed notice of appeal from the 4 August 2014 order.

## II.   Standard of Review

"In reviewing a trial court's Rule 12(b)(6) dismissal, the appellate court must inquire whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Newberne v. Dep't. of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 203 (2005) (citation and quotation marks omitted). "A complaint is properly dismissed pursuant to Rule 12(b)(6) when (1) the complaint, on its face, reveals that no law supports the plaintiff's claim; (2) the complaint, on its face, reveals an absence of facts sufficient to make a good claim; or (3) some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Blow v. DSM Pharms., Inc.*, 197 N.C. App. 586, 588, 678 S.E.2d 245, 248 (2009).

"[W]e review the pleadings *de novo* to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Gilmore v. Gilmore*, __ N.C. App. __, __, 748 S.E.2d 42, 45 (2013) (citation and quotation marks omitted).

III.    Discussion

This appeal centers around the interpretation of a single sentence found within the Agreements; specifically, the last sentence of Article XII, Section 2. Article XII of both Agreements is entitled "Indemnification" and provides as follows, in pertinent part:

> 1.    The Manager does not hereby assume any of the obligations, liabilities or debts of the Owner, except as otherwise expressly provided herein, and shall not, by virtue of its performance hereunder, assume or become liable for any of such obligations, debts or liabilities of the Owner. The Owner hereby agrees to indemnify and hold the Manager, its affiliates and owners, and their respective officers, governors, directors, employees, agents, owners and affiliates (each a "Manager Indemnified Party") harmless from and against any and all claims, actions, liabilities, losses, costs and expenses of any nature whatsoever, including reasonable attorneys' fees and other costs of investigating and defending any such claim or action (a "Loss"), which may be asserted against any of the Manger Indemnified Parties, arising out of or related to (i) the operation of the Department (excluding the acts or omissions of any Employees in the course of providing services in the Department), the Hospital and the Owner, (ii) the acts or omissions of the Department, the Hospital and the Owner or its agents or employees, and (iii) the Manager's performance of its duties hereunder during the term of this Agreement, but excluding any Loss arising as a result of the gross negligence or willful misconduct of the Manager.
>
> 2.    The Manager hereby agrees to indemnify and hold harmless the Owner and its members, officers, governors, directors, employees, agents, and affiliates (each an "Owner Indemnified Party") from and against any and all Loss which may be asserted against an Owner Indemnified

> Party as a result of the gross negligence or willful misconduct of the Manager or its agents or employees in connection with the performance by the Manager of its duties hereunder. In no event shall the Manager be liable under this Agreement for any act of professional malpractice committed by any Medical Staff Physician, or other member of the Department's Medical Staff. **This Article XII Section 2 shall constitute the sole obligation of the Manager with respect to any Loss and any claims arising out of this Agreement, the services provided by the Manager and/or the relationship created hereby, whether such claim is based in contract, tort, fraud or otherwise.**

(emphasis added).

"[T]he goal of construction is to arrive at the intent of the parties when the [contract] was [written.]" *Reaves v. Hayes*, 174 N.C. App. 341, 345, 620 S.E.2d 726, 729 (2005) (citation and quotation marks omitted). "[O]ur courts adhere to the central principle of contract interpretation that [t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011) (citation and quotation marks omitted). "It is presumed that each part of the contract means something." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 393, 390 S.E.2d 150, 153 (1990) (citation omitted).

"A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law. When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury." *Commscope*

*Credit Union v. Butler & Burke, LLP*, __ N.C. App. __, __, 764 S.E.2d 642, 651 (2014) (citation omitted). "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012) (citation omitted). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001) (citation omitted).

In the current case, the clause at issue is found within Article XII, entitled "Indemnification." Where a contract does not define a term used, "non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Reaves*, 174 N.C. App. at 345, 620 S.E.2d at 729 (citation omitted). Here, the Agreements do not define the term "indemnification." "Ordinarily, indemnity connotes liability for derivative fault. In indemnity contracts the engagement is to make good and save another harmless from loss on some obligation which he has incurred or is about to incur to a third party[.]" *Dixie Container Corp. v. Dale*, 273 N.C. 624, 628, 160 S.E.2d 708, 711 (1968) (citation omitted). "The court must construe the contract 'as a whole' and an indemnity provision 'must be appraised in relation to all other provisions.'" *Schenkel & Shultz,*

*Inc. v. Hermon F. Fox & Assocs., P.C.,* 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008) (citation omitted).

On appeal, plaintiff argues that the trial court erred by concluding that plaintiff's claim is "barred by the express language of the contract between the parties[.]" Plaintiff asserts that the trial court misread the disputed clause as an unambiguous exculpatory clause when rather, it is an ordinary indemnity provision, "further explaining the circumstances in which [defendant] would be obligated to indemnify [plaintiff] against third-party claims." Plaintiff contends that Section 1 of Article XII sets forth circumstances where plaintiff would indemnify defendant for third party claims made against defendant, even indemnifying defendant from claims made against defendant by third parties to the extent they arose from defendant's mere negligence. On the other hand, plaintiff interprets Section 2 of Article XII as setting forth circumstances where defendant would indemnify plaintiff for third party claims against plaintiff arising from defendant's gross negligence or willful misconduct. Furthermore, plaintiff reads Section 2 as the parties agreeing that defendant would not "be liable under this Agreement for any act of professional malpractice committed by any Medical Staff Physician, or other member of the Department's Medical Staff."

More importantly, plaintiff argues that defendant's express agreement to indemnify plaintiff against third party claims arising from defendant's gross

negligence and willful misconduct "is not the only way" in which defendant would be

obligated to indemnify plaintiff against third party claims.  Plaintiff suggests that

indemnification obligations, regardless of defendant's contractual indemnity

obligations, could arise in one of three ways – express contract, contract implied-in-

fact, or through equitable concepts arising from the tort theory of indemnity.  Plaintiff

states as follows:

> For example, [defendant] promised to "[a]ssist Owner in negotiating or retaining contractual relationships for anesthesiology, radiology and pathology services, as appropriate" and to "[a]rrange for the purchase or lease by the Owner of all supplies and equipment." . . . The circumstances relating to [defendant's] negotiation of such contracts on behalf of [plaintiff] could, under appropriate facts, create a contract to indemnify implied-in-fact. Similarly, if [plaintiff] was secondarily or derivatively liable for any torts committed by [defendant] (*e.g.*, in a lawsuit against [plaintiff] filed by, or relating to the actions of, an employee under [defendant's] supervision and control), [plaintiff] could have a common law right to indemnification under a contract implied-in-law of primary/secondary liability.

Accordingly, plaintiff interprets the challenged clause as a "catch-all" provision "to

foreclose any such possible indemnification obligations for [defendant] . . . other than

those expressly delineated."  Plaintiff argues that the "catch-all" provision relieves

defendant of any other obligation to indemnify plaintiff whether arising in contract,

in tort, or otherwise.

In contention with plaintiff's interpretation, defendant argues that the clause constitutes a clear and unambiguous, blended indemnity and exculpatory clause that limits defendant's liability under the Agreements. Defendant agrees with plaintiff's contention inasmuch as the last sentence in Section 2 of Article XII is a "catch-all" to the indemnity provision, protecting defendant from extra-contractual circumstances in which defendant is required to indemnify plaintiff. However, defendant argues that the "plain language of the provision makes clear its application spans beyond indemnity." Defendant contends as follows:

> it states that the indemnity obligations of [defendant] are the sole obligation of [defendant] with respect to "<u>any claims arising out of this Agreement</u> . . . whether such claim is based in <u>contract</u>, tort, fraud or otherwise." This language is unmistakably broader than an indemnity provision focused on protecting a party against "extra-contractual circumstances," and contrary to [plaintiff's] argument, speaks directly to <u>contractual</u> circumstances.

Furthermore, defendant argues that reading the clause at issue, in conjunction with Article XIII (entitled "Miscellaneous"), Section 9 of the Agreements, references claims between the parties. Article XIII, Section 9 provides as follows:

> The terms and provisions of this Agreement are intended solely for the benefit of the parties hereto and their respective permitted successors or assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other person or entity.

Lastly, defendant argues that the title of Article XII, "Indemnification," does not limit the application of the clause at issue to indemnification only. Defendant directs our

attention to Article XIII, Section 5 which states that "[t]he headings used in this Agreement have been inserted for convenience and do not constitute provisions to be construed or interpreted in connection with this Agreement."

After careful review, we conclude that both plaintiff and defendant's interpretations of the language of the Agreements are reasonable. *See Dockery*, 144 N.C. App. at 422, 547 S.E.2d at 852 (stating that "[a]mbiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties"). Because the language of the provision creates an ambiguity as to the true intention of the parties, interpretation of an ambiguous contract is best left to the trier of fact. Therefore, we hold that the trial court erred by granting defendant's 12(b)(6) motion to dismiss and reverse the trial court's order.

## IV.    Conclusion

The trial court's order granting defendant's Rule 12(b)(6) motion to dismiss is reversed.

REVERSED.

Judges STROUD and INMAN concur.