Vill. Square, LLC v. G.T.T. Corp., 2020 NCBC 52.

STATE OF NORTH CAROLINA

WAKE COUNTY

VILLAGE SQUARE, LLC,

             Plaintiff,

v.

G.T.T. CORPORATION,

             Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 7368

**ORDER AND OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

1.     **THIS MATTER** is before the Court on Plaintiff Village Square, LLC's Motion for Partial Summary Judgment ("Plaintiff's Motion"), (ECF No. 31), and Defendant's Motion for Partial Summary Judgment ("Defendant's Motion" and collectively the "Motions"), (Def.'s Mot. Partial Summ. J., ECF No. 32 ["Def.'s Mot."]), brought pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the "Rule(s)") filed on November 8, 2019.

2.     For the reasons set forth herein, the Court **DENIES** Plaintiff's Motion and **GRANTS** in part and **DENIES** in part Defendant's Motion.

*Wyrick Robbins Yates & Ponton LLP, by Lee M. Whitman and Paul J. Puryear, for Plaintiff Village Square, LLC.*

*Everett Gaskins Hancock LLP, by James McKinley Hash and E.D. Gaskins, for Defendant G.T.T. Corporation.*

Robinson, Judge.

## I.    INTRODUCTION

3.     On March 1, 1973, Plaintiff Village Square, LLC ("Plaintiff" or "Tenant") and Defendant G.T.T. Corporation ("Defendant" or "Landlord") entered into a 99-year ground lease for a tract of commercial property owned by Defendant, pursuant to

which Plaintiff was tasked with planning, developing, and managing the property. The parties have since amended the lease multiple times. The parties present competing interpretations of the lease and its amendments and request that the Court enter partial declaratory judgment adopting their respective interpretations.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on motions for summary judgment. "But, to provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

5. On March 1, 1973, Plaintiff and Defendant entered into a 99-year ground lease (the "Lease Agreement") for property that is now home to the Cary Village Square Shopping Center (the "Leased Premises"). (Compl. ¶ 4, ECF No. 3; *see also* Lease Agreement, ECF No. 33.4.) The parties intended for Plaintiff to lease, plan, develop, and manage the Leased Premises. (ECF No. 33.3.)

6. The parties recognized that Plaintiff might need to borrow funds for development of the Leased Premises. (Lease Agreement ¶¶ 4, 5.) As a result, the Lease Agreement includes provisions that expressly permit Plaintiff to do so. (Lease Agreement ¶¶ 4, 5.) Plaintiff was permitted to pledge its rights under the Lease Agreement as security for loans. (Lease Agreement ¶¶ 4, 5.) Additionally, in certain circumstances, Defendant could be required to sign documents subordinating its

ownership interest in the Leased Premises in order for Plaintiff to obtain funding.

(Lease Agreement ¶ 5.)

7. Paragraph 4 of the Lease Agreement provides:

4. <u>Use, Assignment and Subletting.</u> Tenant at his sole cost and expense shall have the right during the continuance of this lease to sublease the properties herein as provided in paragraph 3 hereof, to grant rights of way and easements to all persons whoever, including public authorities, to develop and improve the demised premises, to build streets, sidewalks, curbs and gutters, to apply for and cause the demised premises to be rezoned, to protest tax valuations and assessments relating to the demised premises, to use the demised premises for any lawful purpose and in pursuit of any lawful endeavors, to demolish any existing structures, to assign this lease or sublet all or any part of the herein demised premises to such persons, firms, or corporations, and upon such terms and conditions as Tenant may desire, to mortgage all or any part of the demised premises and all or any part of each separate parcel thereof including the fee estate of Landlord without the consent of Landlord, and to do any other act relating to the demised premises just as though Tenant were the owners in fee of the demised premises.

(Lease Agreement ¶ 4.)

8. Paragraph 5 of the Lease Agreement provides:

5. <u>Mortgages on Premises.</u> Landlord and Tenant acknowledge and agree that it is to their mutual interest that the demised premises be improved and developed by Tenant for any lawful purpose, which improvement and development shall require among other things, the execution and delivery of a deed or deeds of trust securing monies borrowed for such purposes on all or on portions of the demised premises and that in certain instances it will be necessary for Landlord to join in the execution of such deeds of trust for the sole purpose of Landlord subordinating Landlord's fee estate on the demised premises, and to the end that this may be accomplished, Landlord agrees that Landlord's fee estate to all or any portion of the demised premises, if required by the mortgage lender and if requested by Tenant, shall be subordinated to the rights of the holder of said deed or deeds of trust, and Landlord further agrees that upon request by Tenant given in writing to Landlord at any time and from time to time during the term hereof Landlord shall execute acknowledge and deliver to Tenant one or more deeds of trust or subordination agreements for the purposes set forth herein.

(Lease Agreement ¶ 5.)

9.     Between 1973 and 1984, the Lease Agreement was amended three times in ways not relevant to the parties' current dispute.  (*See* ECF Nos. 33.7, 33.8, 33.9.)  On March 20, 1997, Plaintiff and Defendant amended the Lease Agreement with the Fourth Supplemental Lease Agreement (the "Fourth Amendment").  (Fourth Suppl. Lease Agreement, ECF No. 33.14 ["Fourth Amend."].)

10.     Paragraph 3 of the Fourth Amendment provides that "[t]he transfer of any property subject to the Lease Agreement including, but not limited to, a sale, gift, assignment, or lease of said property, shall require the prior written approval of Landlord, which approval will not be unreasonably withheld."  (Fourth Amend. ¶ 3.)

11.     On March 28, 2007, Plaintiff and Defendant amended the Lease Agreement yet again with a Fifth Supplemental Lease Agreement (the "Fifth Amendment").  (Compl. ¶ 9; *see also* Fifth Suppl. Lease Agreement, ECF No. 33.15 ["Fifth Amend."].)

12.     Section 1 of the Fifth Amendment provides:

> In connection with Tenant's financings or refinancings of loans secured by Tenant's interest in the Leased Premises, Landlord, pursuant to paragraphs 4 and 5 of the Original Lease Agreement, shall, upon Tenant's request, execute and deliver to Tenant such deeds of trust, mortgages, assignments, estoppel certificates, loan closing statements, title company affidavits, and such other documents as may be reasonably requested by Tenant, Tenant's lender, or title insurer (collectively, "Landlord's Mortgage Documents").  The obligation of Landlord to execute and deliver to Tenant the Landlord's Mortgage Documents is subject to the condition that the sum of the aggregate of Tenant's financing or re-financings secured by Tenant's interest in the Leased Premises and Tenant's fee interest in the properties comprising portions of the shopping center in Cary, North Carolina known as The Village Square (collectively, the "Fee Premises") shall not exceed for the

remainder of calendar year 2007 $13,500,000.00 (the "Initial Financing Cap").

Commencing January 1, 2008 and as of the first day of each calendar year thereafter during the term of the Lease, Landlord shall be obligated to deliver to Tenant Landlord's Mortgage Documents upon Tenant's request and without condition, payment, or other consideration provided that the aggregate of Tenant's financing or re-financing secured by Tenant's interest in the Leased Premises and the Fee Premises does not exceed the Initial Financing Cap as increased January 1st of each year by the greater of four percent (4%) or the percentage increase in the CPI (as hereinafter defined) over the CPI as of January 1, 2007 compounded each year; provided, however, in no event shall the Initial Financing Cap as increased by the foregoing formula exceed sixty percent (60%) of the appraised value of the Leased Premises and the Fee Premises, said appraised value to be determined, subject to the following paragraph, with reference to appraisal obtained by Tenant's lender (the "Lender's Appraisal"), a copy of which shall be given to Landlord promptly after receipt by Tenant.

(Fifth Amend § 1.)

13.    Among other steps, Plaintiff developed and caused to be constructed on the Leased Premises the Cary Village Shopping Center. (Compl. ¶ 4.) In 2012, Plaintiff determined that the shopping center required a new anchor tenant, which would require additional financing. (Affidavit G. Smedes York ¶ 27, ECF No. 33.51 ["York Aff."].) Plaintiff began negotiations with SCP Realty, L.P. ("SCP") to bring a Harris Teeter grocery store to the shopping center at the Leased Premises and SCP ultimately agreed to and did invest the capital necessary to construct the Harris Teeter structure in exchange for SCP's becoming a partner and part owner of Plaintiff. (York Aff. ¶¶ 28, 29.)

14.    In 2016, the parties began discussing selling all or portions of the Leased Premises, a buyout by Plaintiff of SCP's ownership interest in Plaintiff, as well as

refinancing the Leased Premises. (York Aff. ¶ 33; ECF Nos. 33.55, 33.56, 33.58, 33.62 ["Jan. 24, 2017 E-mail"].) On January 24, 2017, Plaintiff informed Defendant of its decision to buy out SCP. (York Aff. ¶ 34; Jan. 24, 2017 E-mail.)

15. Because Plaintiff did not have sufficient funds to do so, the buyout would require it to obtain financing. (York Aff. ¶¶ 34, 39; Jan. 24, 2017 E-mail; ECF No. 33.64.) Plaintiff desired to use its rights under the Lease Agreement as amended to obtain a loan from a commercial lender, Bank of North Carolina, to raise the funds necessary to buy back SCP's interest in Plaintiff. (Jan. 24, 2017 E-mail.)

16. On May 24, 2017, Plaintiff provided Defendant with a lender's appraisal and loan commitment letter from Bank of North Carolina for a loan of $19,975,000. (ECF No. 33.66 ["May 24, 2017 E-mail"].) The amount of the proposed loan was sufficient to both purchase SCP's interest in Plaintiff and refinance the existing loans taken by Plaintiff and secured by the Leased Premises. (ECF Nos. 33.23 ["July 17, 2017 E-mail"], 33.64.) The closing for this financing was scheduled for June 30, 2017. (May 24, 2017 E-mail.)

17. With the belief that the financing would be less than the financing cap, as defined by Section 1 of the Fifth Amendment, Plaintiff believed that it had the absolute right to borrow the $19,975,000 and that Defendant was obligated under the Lease Agreement as amended to subordinate its interest for the loan. (May 27, 2017 E-mail; ECF No. 33.24.) However, this closing did not occur. (York Aff. ¶ 37.)

18. Defendant indicated that it had several problems with the loan documents, and on July 17, 2017, Defendant advised Plaintiff it would subordinate to the loan if

its subordination was limited to $13,600,000. (York Aff. ¶ 37; ECF No. 33.71 ["Aug. 17, 2017 E-mail"].) The lower amount ($13,600,000 versus $19,975,000) represented the borrowing of an amount necessary solely to refinance the already existing loans on the property without any new amount for purchase by Plaintiff of SCP's interest. (*See* July 17, 2017 E-mail; ECF No. 33.26.)

19. On August 17, 2017, Defendant informed Plaintiff that it believed "any loans must be for the improvement and development of the [Leased Premises] as provided for under the [Lease Agreement]." (Aug. 17, 2017 E-mail.) Defendant ultimately refused to subordinate unless Plaintiff made additional concessions, modified language in the subordination documents Defendant was being asked to sign, and paid Defendant a fee of $10,000. (York Aff. ¶¶ 36, 40; ECF No. 33.28.)

20. Notwithstanding Defendant's refusal to subordinate, which prevented Plaintiff from obtaining the financing from its lender, on June 1, 2018, York Family Properties Limited Partnership, as manager and part owner of Plaintiff, Plaintiff, and SCP executed a Sale and Transfer of Membership Interest Agreement in Village Square, LLC. (York Aff. ¶ 41.) In order to buy out SCP, Plaintiff had to borrow funds from its owners and other entities owned by the owners to finance the transaction. (York Aff. ¶ 41.)

## III. PROCEDURAL BACKGROUND

21. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

22. Plaintiff filed its Complaint on June 18, 2018 asserting a claim for breach of contract and a claim for declaratory judgment against Defendant. (Compl. 9–12.)

23. This case was designated as a mandatory complex business case and assigned to the undersigned on July 30, 2018. (ECF Nos. 1, 2.)

24. Defendant filed its Answer and Counterclaim on August 27, 2018 asserting a claim for declaratory judgment against Plaintiff. (Counterclaim ¶ 10–11, ECF No. 9.) Neither party sought a trial by jury.

25. Following discovery and in compliance with the Case Management Order entered in this case, (ECF No. 14), Plaintiff and Defendant filed the Motions on November 8, 2019, which were fully briefed.

26. The Court held a hearing by video conference on the Motions on June 1, 2020. (*See* ECF No. 45.)

27. The Motions are ripe for resolution.

## IV. LEGAL STANDARD

28. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

29. The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

*Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citations omitted).

30. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784−85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C.G.S. § 1A-1, Rule 56(e).

## V. ANALYSIS

31. Both Plaintiff and Defendant seek a declaratory judgment interpreting the Lease Agreement and its amendments; however, they present conflicting, if not diametrically opposed, positions regarding how the provisions of these documents are to be interpreted. At bottom, the dispute between the parties arises from a

disagreement over whether Plaintiff can borrow money and burden the Leased Premises with a debt, requiring Defendant to subordinate its interest, where the proceeds are not used to improve or develop the Leased Premises.

32. Plaintiff seeks a declaration by the Court as a matter of law that Defendant is

> contractually obligated to subordinate its fee simple interest in the property when necessary to secure a loan to [Plaintiff] so long as the total loan amount to be subordinated does not exceed the financing cap or 60% loan-to-value ratio contained in Section 1 of the Fifth Supplemental Lease Agreement, regardless of whether or not the loan proceeds are used to improve and develop the property.

(Compl. ¶ 43.)

33. Defendant seeks clarification as to the

> scope of [Defendant's] obligation to subordinate its fee interest for loans sought by [Plaintiff] and secured by the [Leased Premises], and the extent to which such proposed loans are subject to [Defendant's] approval and are limited by appraised value, by financing caps, and by purpose; and whether the scope of the obligation to execute and deliver requested loan documents is subject to "reasonableness."

(Counterclaim ¶ 7.)

34. Defendant's Motion requests that the Court enter partial summary judgment in its favor on its claim for declaratory judgment,

> declaring that the Fifth Supplemental Lease Agreement did not abrogate either the provisions of Paragraph 5 of the Lease between the parties dated March 1, 1973, concerning loan purpose and subordination; nor the provisions of Paragraph 3 of the Fourth Supplemental Lease Agreement making the transfer by [Plaintiff] of any property subject to the Lease, including conditional transfers to secure loans, subject to [Defendant's] reasonable approval.

(Def.'s Mot. 1.)

35. The North Carolina Declaratory Judgment Act, N.C.G.S. § 1-253, *et seq.*, provides parties an "appropriate procedure for alleviating uncertainty in the interpretation of [a contract.]" *Bellefonte Underwriters Ins. Co. v. Alfa Aviation, Inc.*, 61 N.C. App. 544, 547, 300 S.E.2d 877, 879 (1983). "When the language of the contract is clear and unambiguous, construction of the [contract] is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Bank of Am., N.A. v. Rice*, 230 N.C. App. 450, 456, 750 S.E.2d 205, 209 (2013) (citation omitted). "Accordingly, a court can decide a declaratory judgment claim, as a matter of law, when the claim rests on interpreting clear and unambiguous contractual language." *Pender Farm Dev., LLC v. NDCO, LLC*, 2020 NCBC LEXIS 43, at *24 (N.C. Super. Ct. Apr. 7, 2020).

36. "A contractual clause is ambiguous if the language used is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Novacare Orthotics & Prosthetics E., Inc. v. Speelman*, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000) (citation and quotation marks omitted). "Parties can differ as to the interpretation of the language without its being ambiguous[.]" *Walton v. City of Raleigh*, 342 N.C. 879, 881–82, 467 S.E.2d 410, 412 (1996). "When an agreement is ambiguous and the intention of parties is unclear, however, interpretation of the contract is for the [finder of fact]." *Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008).

37.    Plaintiff contends that the "only tenable reading" of the Lease Agreement and the amendments thereto is that Defendant is obligated to subordinate its interest in the Leased Premises for Plaintiff to obtain financing or refinancing when:

> (1) pursuant to Section 5 of the original Lease Agreement, . . . the loan allow[s Plaintiff] to continue to improve and develop the property, (2) pursuant to the Fifth Supplement, . . . the loan [is] under the loan-to-value cap when compared to the appraised value of the land, and . . ., (3) pursuant to the Fifth Supplement, in the event [Plaintiff] or its lender asks for documents beyond "deeds of trust, mortgages, assignments, estoppel certificates, loan closing statements, and title company affidavits," . . . that request  for the execution of additional documents [is] reasonable.

(Pl. Village Square, LLC's Reply Br. Suppl. Mot. Partial Summ. J. 9, ECF No. 40 ["Pl. Reply"].)

38.    Defendant's interpretation of the Lease Agreement and its amendments requires Defendant to subordinate its fee interest "without condition, payment or other consideration" only with respect to a loan that:

> 1. Is for the purpose of improvement and development or the refinancing of the unpaid amount of such a previous loan; and
>
> 2. Requires only that [Defendant] subordinate its fee interest to the lien of the deed of trust (as opposed to assuming positive obligations to the lender);
>
> 3. Is within the maximum allowed amount; and
>
> 4. Is otherwise reasonable.

(Def. Br. Supp. Def.'s Mot. Partial Summ. J. 9–10, ECF No. 34 ["Def. Br. Supp."] (quotation marks, citations, and emphasis omitted).)

39.    As an initial matter, the Court notes that the declaratory judgments sought by the parties largely address the same provisions of the Lease Agreement and its

amendments. The disputes raised by the parties in the Motions can be summarized as: (1) whether Defendant was required under the Lease Agreement and its amendments to execute documents subordinating its interest in the property to the $19,975,000 loan and/or the $13,600,000 loan; (2) whether Defendant's obligation to subordinate is limited to financings or refinancing sought to improve or develop the Leased Premises pursuant to Paragraph 5 of the Lease Agreement as amended; (3) whether Section 1 of the Fifth Amendment abrogates the reasonable approval provision in Paragraph 3 of the Fourth Amendment, creating a mandatory obligation for Defendant to subordinate its interest in the Leased Premises; and (4) whether the Fifth Amendment imposes additional obligations on Defendant beyond merely subordinating its interest in the Leased Premises.

40.     While the Court recognizes that the above-listed disputes are by no means exhaustive of the issues to be ultimately resolved by trial in this case, the Court limits its analysis to those issues expressly raised in the parties' briefs and those that can properly be analyzed with the record before it. To the extent that the Court does not expressly address an argument raised by the parties, the Court concludes that the issues are so interrelated that the Court is unable to properly enter a declaratory judgment by summary judgment based on the record before it. *Lumbee Enter. Dev., Inc. v. Lumbee Reg'l Dev. Ass'n*, 2020 NCBC LEXIS 61, at \*25–27 (N.C. Super. Ct. May 8, 2020) (using the Court's discretion to decline entering declaratory judgment when two of the issues were so interrelated that it would be trying the claim by piecemeal and would not settle the controversy).

41.    The Court also recognizes that the Motions before it are limited in scope and request that the Court grant partial summary judgment on their respective declaratory judgment claims and only interpret certain provisions of the Lease Agreement and its amendments.  Pursuant to Rule 56, a party may "move . . . for a summary judgment in [its] favor upon all or any part thereof."  N.C.G.S. 1A-1, Rule 56.  It is properly within the Court's authority to narrow the issues for trial and grant partial summary judgment in interpreting the Lease Agreement and its amendments, as requested by the parties.  *See, e.g., Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 2020 NCBC LEXIS 70, at *11–14 (N.C. Super. Ct. June 5, 2020).

42.    Absent a showing by either party that the plain meaning of the Lease Agreement as amended supports either of their partial interpretations, the Motions cannot be resolved on summary judgment.  *See Pender Farm Dev., LLC*, 2020 NCBC LEXIS 43, at *25–26.  The Court declines to adopt Plaintiff's and Defendant's respective interpretations in total for the reasons stated herein but concludes that Defendant's Motion may be granted in part in order to simplify and narrow the issues to be determined by the Court in the upcoming trial.

## A.    The Disputed Loan

43.    The loan documentation for the proposed $19,975,000 loan and the proposed $13,600,000 loan, which is at the heart of this dispute, is not before the Court.  As a result, the Court DENIES the Motions to the extent they request a declaratory judgment determining whether Defendant breached the Lease Agreement and its amendments in refusing to execute the loan documents provided

to it. The absence of the loan documentation from the record has no bearing on the Court's ability to decide interpretative issues on the Lease Agreement and its amendments as presented to the Court.

### B. Loan Purpose

44. Plaintiff takes multiple, and differing, positions regarding the applicability of Paragraph 5 of the Lease Agreement as it pertains to Defendant's obligation to subordinate its interest in the Leased Premises for a loan obtained by Plaintiff, including the following: (1) Defendant must subordinate its interest for loans "regardless of whether or not the loan proceeds are used to improve and develop the property," (Compl. ¶ 43); (2) Defendant must subordinate its interest for loans that "allow [Plaintiff] to continue to improve and develop the property," (Br. Supp. Pl. Village Square, LLC's Mot. Partial Summ. J. 22, ECF No. 35 ["Pl. Br. Supp."]); and (3) Defendant must subordinate for "any loan [Plaintiff] determined necessary to ensure it could engage in the 'process of getting [the Leased Premises] to a developed stage,' to improv[e] [Defendant's] property, and to accomplish[] these goals for 99 years in order to extract value." (Pl. Reply 6 (citation and emphasis omitted)).

45. Section 1 of the Fifth Amendment applies to financings obtained by Plaintiff pursuant to "paragraph 4 and paragraph 5 of the Original Lease Agreement." (Fifth Amend. § 1.) Therefore, it is a reasonable interpretation that Section 1 of the Fifth Amendment applies only to loans obtained by Plaintiff pursuant to *both* Paragraph 4 and Paragraph 5 of the Lease Agreement. *See Golden Triangle #3, LLC v. RMP-Mallard Pointe, LLC*, 2020 NCBC LEXIS 37, at \*12–13 (N.C. Super. Ct. Mar. 23,

2020) (providing that use of the word "and" connotes "both"). The Court concludes that Paragraph 5 of the Lease Agreement requires Defendant to subordinate its interest in the Leased Premises for only those loans obtained by Plaintiff for the improvement or development[1] of the Leased Premises. (Lease Agreement ¶ 5.)

46.    Accordingly, the Court concludes as a matter of law that, under the Lease Agreement and its amendments, Defendant's obligation to subordinate its interest in the Leased Premises is limited to when the financing obtained by Plaintiff is for the improvement or development of the Leased Premises.

47.    Given this conclusion, the Court is next confronted with the issue of whether the purchase by Plaintiff of the ownership interest of one of its co-owners constitutes improvement or development pursuant to the terms of the Lease Agreement as amended. Defendant contends the answer to this question, as a matter of law, is "no." It further contends "the parties . . . intended to limit borrowing to hard costs (capital improvements) designated to complete the construction of structures for rental by subtenants, thus generating rents benefitting both" Plaintiff and Defendant. (Def.'s Br. Opp. Pl.'s Mot. Partial Summ. J. 12, ECF No. 38 ["Def. Resp. Br."].)

48.    In its interpretation of the term "development," Defendant in part relies on Paragraph 2 of the Lease Agreement, which provides "[a] separate parcel shall be deemed to be 'developed' when construction is completed on that parcel and

---

[1] Paragraph 5 of the Lease Agreement acknowledges Plaintiff's role to both improve and develop the property. This makes clear to the Court that Defendant's obligation to subordinate arises for a loan obtained by Plaintiff to achieve either the improvement or development of the Leased Premises.

subtenants have commenced paying rent for their use thereof." (Lease Agreement ¶ 2; Def. Resp. Br. 12.) However, Defendant's narrow interpretation of the term "development" is unsupported by the four corners of the Lease Agreement and its amendments. Paragraph 2's definition of developed clearly was intended to aid the parties in making rent adjustments for the Leased Premises, not serve as a complete definition of improvement and development as used in Paragraph 5. (Lease Agreement ¶ 2.) The Lease Agreement does not expressly define improvement or development. Paragraph 2, at best provides, a partial definition of "development."

49. "Where a contract does not define a term used, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 825, 778 S.E.2d 308, 312 (2015) (citation and quotation marks omitted). Improve means "to enhance in value or quality" or "make better." *See* Improve, Merriam-Webster Dictionary (2020). The Merriam-Webster Online Dictionary provides multiple definitions of "develop" including "to make suitable," "to create or produce especially by deliberate effort over time." *See* Develop, Merriam-Webster Dictionary (2020).

50. It is clear, based on the ordinary meaning of the words, and the Court concludes for purposes of the Motions, that buying SCP's interest in Plaintiff does not constitute improvement or development of the Leased Premises.

51. Therefore, the Court GRANTS Defendant's Motion in part and limits its determination to the conclusions that (1) Defendant's obligation to subordinate only

arises when Plaintiff's financing is for the purposes of improvement or development of the Leased Premises or when Plaintiff obtains refinancing of such loans; and (2) buying out SCP is not improvement or development of the Leased Premises.

52. However, and as noted above, because the loan documents for the $19,975,000,00 loan and the $13,600,000 loan are not before the Court, the Court is unable to make a determination as to Defendant's obligation to subordinate to this loan. Therefore, the Court DENIES Defendant's Motion to the extent that it requests that the Court determine whether the Lease Agreement and its first seven written amendments mandate that Defendant subordinate its interest in the Leased Premises for the closing of the $19,975,000 loan or the $13,600,000 loan without the loan documentation before the Court.

## C. The Scope of Defendant's Obligation to Subordinate

53. Defendant requests that the Court enter a declaratory judgment providing that when Defendant is obligated to subordinate its interest in the Leased Premises for the purposes of Plaintiff obtaining financing or refinancing for the improvement or development of the Leased Premises, Defendant's only obligation is to subordinate its interest, opposed to "assum[ing] positive obligations to the lender," such as purchasing insurance for the Leased Premises. (Def. Resp. Br. 13–14; *see also* Def. Br. Supp. 8–10.) As already determined by the Court, Section 1 of the Fifth

Amendment applies to financings and refinancing obtained by Plaintiff pursuant to both Paragraph 4 and Paragraph 5 of the original Lease Agreement.

54. Paragraph 5 of the Lease Agreement requires Defendant to execute and deliver a deed of trust for the "sole purpose of Landlord subordinating Landlords' fee estate on the" Leased Premises for financing used for the improvement and development of the Leased Premises. (Lease Agreement ¶ 5.) The Court has carefully considered the language of the operative documents. Neither Paragraph 5 of the original Lease Agreement nor the Fifth Amendment impose additional obligations on Defendant, and they cannot reasonably be read to impose a mandatory obligation on Defendant to take on additional affirmative obligations beyond subordinating its interest in the Leased Premises. (*See* Fifth Amend. § 1.)

55. Therefore, the Court GRANTS Defendant's Motion in part and concludes that while the Lease Agreement and its first seven written amendments (absent evidence that the Lease Agreement was modified or a new contract was entered into between the parties)[2] obligate Defendant to subordinate its interest in the Leased

---

[2] Notably, not before the Court is Plaintiff's breach of contract claim based on its allegations that around June 2017 Defendant entered into and then breached an oral agreement to subordinate to the $19,975,000 loan in exchange for a $10,000 payment. (*See* Compl. ¶¶ 16–18, 35.) To the extent that the Court makes determinations regarding interpretation of the Lease Agreement as amended, such determinations do not preclude the Court from later concluding, if properly proven at trial, that the Lease Agreement was orally modified or the parties entered into a subsequent oral agreement obligating Defendant to subordinate to the $19,975,000 loan.

Premises in certain circumstances, the Lease Agreement nor its amendments obligate Defendant to assume any additional positive or affirmative obligations.

56. As previously stated, the loan documentation for the $19,975,000 and the $13,600,000 loans is not before the Court; therefore, the Court declines to determine whether Defendant is required to subordinate its interest for the loan documentation at issue, and to the extent that Defendant's Motion requests such a declaration, the Motion is DENIED.

## D. Reasonable Approval Provision

57. Lastly, Defendant contends that "[o]ne cannot reasonably construe the Fifth [Amendment] to eliminate. . . the 'reasonable approval' provision of the Fourth [Amendment]." (Def.'s Br. Supp. 9.) As stated above, the Fourth Amendment contains a "reasonable approval provision," which states: "[t]he transfer of any property subject to the Lease Agreement, including, but not limited to, a sale, gift, assignment, or lease of said property, shall require the prior written approval of Landlord, which approval will not be unreasonably withheld." (Fourth Amend. ¶ 3.)

58. Plaintiff contends Defendant's interpretation of the supplemental lease agreements is inconsistent, and requests that the Court enter a declaratory judgment concluding that Section 1 of the Fifth Amendment "creates a mandatory obligation" for Defendant to subordinate its interest in the Leased Premises so long as the total loan amount does not exceed the financing cap as defined by Section 1, in effect abrogating the reasonable approval provision of the Fourth Amendment. (Pl. Br. Supp. 21–22, 26.) The Fifth Amendment provides that Defendant "shall, upon

Tenant's request, execute and deliver to Tenant such deeds of trust" and other documents "upon Tenant's request and without condition, payment, or other consideration provided" that the loan is below the financing cap. (Fifth Amend. § 1.)

59. After careful review of the Lease Agreement and the amendments thereto, the Court concludes that the provisions at issue are capable of several reasonable interpretations including: the reasonable approval provision of the Fourth Amendment and Section 1 of the Fifth Amendment are consistent provisions and concurrently govern the relationship between the parties; or Section 1 of the Fifth Amendment abrogates the reasonable approval provision in whole or in part. In other words, neither Plaintiff's nor Defendant's asserted interpretation is unreasonable.

60. Therefore, the Motions should be DENIED as to the parties' requests to establish as a matter of law an interpretation of the Lease Agreement and the amendments as to the applicability of the reasonable approval provision in Paragraph 3 of the Fourth Amendment.

## VI.     CONCLUSION

61. For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's Motion and **DENIES** Plaintiff's Motion in total. The Court **GRANTS** summary judgment for Defendant and its holding herein is limited to and **ENTERS** partial declaratory judgment as follows:

A.   Defendant is obligated to subordinate its interest only when Plaintiff obtains financing for improvement or development of the Leased Premises or obtains refinancing for such loans;

B. Buying out SCP's interest in Plaintiff does not constitute improvement or development of the Leased Premises; and

C. Pursuant to the Lease Agreement and the first seven written amendments, in the event they were not subsequently modified by the parties, Defendant is obligated to subordinate its interest only in certain circumstances, which does not include taking on additional positive obligations.

62. Except as expressly **GRANTED** herein, the Motions are **DENIED**.

63. Notably, the Court must still decide numerous issues at trial, including, but not limited to: (1) whether, as contended by Plaintiff, Defendant and Plaintiff entered into a new contract to govern the transactions at issue, or, alternatively, modified the Lease Agreement and its amendments; (2) whether Defendant breached the Lease Agreement and its amendments, as drafted or as modified, when it refused to subordinate its interest for the $19,975,000 loan and the $13,600,000 loan; (3) whether Section 1 of the Fifth Amendment abrogates the reasonable approval provision in Paragraph 3 of the Fourth Amendment; and (4) damages that Plaintiff is entitled to, if any.

**SO ORDERED**, this the 20th day of July, 2020.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
 for Complex Business Cases