Yoder v. Verm, 2025 NCBC 22.

STATE OF NORTH CAROLINA

HENDERSON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23CVS001820-440

DANIEL YODER, M.D.,

        Plaintiff,

v.

ALAN VERM, M.D.; LOOKING
GLASS EYE CENTER, P.A.; and
LOOKING GLASS
ENTERPRISES, LLC,

        Defendants.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1.     **THIS MATTER** is before the Court upon Plaintiff Daniel Yoder M.D.'s ("Plaintiff" or "Dr. Yoder") Motion for Partial Summary Judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure in the above-captioned case (the "Motion").[1]

2.     Having considered the Motion, the parties' briefs in support of and in opposition to the Motion, the relevant pleadings, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS** Plaintiff's Motion as set forth below.

> *Searson, Jones, Gottschalk & Cash, PLLC, by W. Scott Jones, Elizabeth Newman, and Stephen Lacy Cash, for Plaintiff Daniel Yoder, M.D.*
>
> *James, McElroy & Diehl, P.A., by Richard B. Fennell, Jennifer M. Houti, Adam L. Ross, and Haley M. Lohr, for Defendants Alan Verm, M.D., Looking Glass Enterprises, LLC, and Looking Glass Eye Center, P.A.*

Brown, Judge.

---

[1] (Pl.'s Mot. Partial Summ. J. [hereinafter "Pl.'s Mot."], ECF No. 70.)

I.

FACTUAL AND PROCEDURAL BACKGROUND

3.     While the Court does not make findings of fact on a motion for summary judgment, "it is helpful to the parties and the courts for the trial judge to articulate a summary of the material facts which he considers are not at issue and which justify entry of judgment." *Collier v. Collier*, 204 N.C. App. 160, 161–62 (2010) (citation and quotation marks omitted).  Accordingly, the following background, drawn from the undisputed evidence submitted by the parties, is intended only to provide context for the Court's analysis and ruling and not to resolve issues of material fact.

4.     Dr. Yoder and Defendant Alan Verm, M.D. ("Dr. Verm") are ophthalmologists who once practiced medicine together in western North Carolina as sole and equal shareholders of Defendant Looking Glass Eye Center, P.A. ("LGEC").[2] At one time they were also the sole and equal members of Defendant Looking Glass Enterprises, LLC ("LGE"), which owns a medical office building and real property in Hendersonville, North Carolina.[3]  LGE holds a 72% membership interest in Healthcare LLC, VII ("Healthcare VII"), which holds the ground lease for and owns a medical office building ("MOB") in Brevard, North Carolina, out of which LGEC operates its Hendersonville medical office (the "Healthcare Building").[4]

---

[2] (Settlement Agreement and Mutual Release [hereinafter "Settlement Agreement"] 2.A., ECF No. 2 (redacted), ECF No. 60 (unredacted).)

[3] (Settlement Agreement 2.H.)

[4] (Settlement Agreement 2.H.)

5. The current dispute has its origins in the settlement of three mandatory complex business cases previously before this Court: *Looking Glass Eye Center, P.A. v. Daniel M. Yoder, M.D.* (Henderson County Superior Court, Civil Action No. 22-CVS-1141); *Daniel Yoder v. Looking Glass Enterprises, LLC* (Henderson County Superior Court, Civil Action No. 22-CVS-1384); and *Daniel Yoder, M.D., individually and derivatively on behalf of Looking Glass Eye Center, P.A. v. Looking Glass Eye Center, P.A. and Alan Verm, M.D.* (Transylvania County Superior Court, Civil Action No. 22-CVS-332) (collectively, the "Original Litigation").[5] Dr. Yoder, Dr. Verm, LGEC, and LGE were the sole parties to the Original Litigation.

6. After engaging in months of extensive, arms-length negotiations in 2022, the parties to the Original Litigation compromised and settled their differences in full and final settlement of all matters in controversy.[6] They memorialized the resolution of the Original Litigation in a written settlement agreement (the "Settlement Agreement"),[7] which all parties signed in December 2022.[8] Because the Transylvania County lawsuit contained derivative claims, the Court also approved

---

[5] (*See also* Verified Compl. ¶ 6, ECF No. 2; Settlement Agreement 1. The Court may take judicial notice of the Original Litigation among the parties. *See Stocum v. Oakley*, 185 N.C. App. 56, 61 (2007) ("Trial courts may properly take judicial notice of its [sic] own records in any prior or contemporary case when the matter noticed has relevance.") (citation and quotation marks omitted).)

[6] (*See* Verm Defs.' Answer Affirmative Defenses & Countercls. ¶ 8, ECF No. 3 ("It is specifically admitted that the parties to the Lawsuits reached a settlement following extensive, arms-length negotiations."); Settlement Agreement 1.)

[7] (Settlement Agreement.)

[8] (Settlement Agreement 12.)

the parties' settlement in that action on 15 December 2022.[9]  Pursuant to the terms of the Settlement Agreement, the parties dismissed all claims in each action with prejudice, thereby bringing the Original Litigation to an end.

7.     This current action arises out of Dr. Yoder's claims that Dr. Verm, LGEC, and LGE (collectively, "Defendants") violated terms of the Settlement Agreement. Specifically, on 28 November 2023, eleven months after this Court's approval of the Settlement Agreement, Dr. Yoder filed a five-count Verified Complaint alleging Defendants have "failed and refused to comply with all of the obligations imposed . . . by the terms of the Settlement Agreement."[10]  The gravamen of the current matter before the Court is Dr. Yoder's fourth claim for breach of contract against Dr. Verm and LGE for their alleged failure to pay him 36% of the appraised value of the Healthcare Building per the terms of the Settlement Agreement.[11]

8.     Defendants filed their Answer, Affirmative Defenses, and Counterclaims on 17 January 2024.[12]  Dr. Yoder filed his Affirmative Defenses and Reply to the Counterclaims on 14 February 2024.[13]  Defendants then filed a Rule 12(c) Motion for

---

[9] (Verified Compl. ¶¶ 8–9; Order Approving Proposed Settlement Agreement, Transylvania County Civil Action No. 22-CVS-332, ECF No. 38.)

[10] (Verified Compl. ¶ 16.)  The Original Litigation, as well as this action when initially filed, were assigned to former Business Court Chief Judge Louis A. Bledsoe, III.  The current action was reassigned to the undersigned on 10 January 2025 upon Judge Bledsoe's retirement. (ECF No. 81.)

[11] (Verified Compl. ¶¶ 69–81.)

[12] (Verm Defs.' Answer Affirmative Defenses & Countercls., ECF No. 3.)

[13] (Pl.'s Affirmative Defenses & Reply, ECF No. 6.)

Partial Judgment on the Pleadings or, in the alternative for Partial Summary Judgment (the "Rule 12(c) Motion") on 18 April 2024.[14]

9.    Defendants ultimately advanced the Rule 12(c) Motion solely to (i) dismiss Count Four of Plaintiff's Verified Complaint and (ii) obtain judgment on their Counterclaim as sought in Paragraph 2(h) of their Prayer for Relief.[15]  These claims reflected the parties' competing interpretations of two paragraphs in section 2.H.c. of the Settlement Agreement, which outlined the terms under which Dr. Yoder would be compensated for Dr. Verm's purchase of his interest in Healthcare VII.  Section 2.H.c. provides, in relevant part, as follows:

> c. **Purchase of Yoder's Interest in Healthcare VII**
>
> Upon receipt of the appraisals of the Healthcare Building, Verm shall act promptly and work in good faith and in a commercially reasonable manner to effectuate his purchase of Yoder's membership interest in Healthcare VII.  More specifically, Verm shall work in good faith with ACN to permit Verm to purchase Yoder's membership interest in Healthcare VII for 36% of the appraised fair market value of the Healthcare Building and any cash held by that entity, after subtracting the amount of any outstanding debts of that entity in existence as of the dates of this Agreement, i.e., the Healthcare VII Buyout.  Upon Yoder's receipt of such payment, Yoder's membership interest in Healthcare VII shall be considered sold and transferred in full to Verm, and Yoder shall be deemed to have resigned from any and all positions or affiliations with Healthcare VII, including, but not limited to, as a member, officer, director, manager, or agent.
>
> \*\*\*

---

[14] (R. 12(c) Mot. Partial J. on Pleadings or, in the alt. Partial Summ. J., ECF No. 19.)

[15] (Order & Op. Defs.' R 12(c) Mot. Partial J. on Pleadings, or in the alt. Partial Summ. J. & on Pl.'s Objs., ¶¶ 14–16. [hereinafter "Defs.' 12(c) Order & Op."], ECF No. 62); *see also* Not. Partial Withdrawal Mot., ECF No. 58.)

Notwithstanding the foregoing, **in the event that, during the thirty days following the Settlement Date, the Parties confirm that ACN intends to market and sell the Healthcare Building,** Verm shall instead promptly work in a good faith and commercially reasonable matter [sic] with ACN to cause Healthcare VII to market and to sell the Healthcare Building in a commercially reasonable manner, and upon consummation of the sale, Yoder shall be paid net proceeds, plus any cash held by that entity at the time of the closing of the sale of the Healthcare Building, commensurate with his 36% membership interest in Healthcare VII.[16]

10. Dr. Yoder filed Objections concerning the Rule 12(c) Motion on 7 May 2024 (the "Objections").[17] The Court held a hearing on Defendants' Rule 12(c) Motion and Plaintiff's Objections on 26 June 2024.[18]

11. The parties presented diametrically opposing interpretations of section 2.H.c. of the Settlement Agreement in their pleadings, briefs, and at the 26 June hearing. Plaintiff contended that, under section 2.H.c., he is "'entitled to 36% of *the appraised value* of the Healthcare Building and any cash held by Healthcare VII, after subtracting the amount of any outstanding debts of Healthcare VII in existence as of the date of the Settlement Agreement.'"[19] In opposition, Defendants argued that section 2.H.c. provides that "'upon the sale of the [Healthcare Building], [Dr.] Yoder

---

[16] (Settlement Agreement, Sec. 2.H.c. (emphasis added).)

[17] (Pl's. Objs. Consideration Aff. Jennifer Houti & Premature Consid. Alt. Mot. Partial Summ. J., ECF No. 31.)

[18] (Not Hr'g, ECF No. 29.)

[19] (Verified Compl. ¶ 79; Verm Defs. Br. Supp. Rule 12(c) Mot. 9–11, ECF No. 20; Defs.' 12(c) Order & Op. ¶ 16 (emphasis in original).)

is entitled to disbursement of 36% of *the net proceeds from the sale* plus 36% of the net cash held by Healthcare LLC, VII at that time, and nothing more.'"[20]

12.   On 10 September 2024, Judge Bledsoe issued an Order and Opinion on Defendants' Rule 12(c) Motion for Partial Judgment on the Pleadings (the "12(c) Opinion") resolving the Rule 12(c) Motion and the Objections.[21]   Judge Bledsoe concluded Defendants' arguments and interpretation of section 2.H.c. were unavailing:

> Based on its careful review of the Settlement Agreement, the Court concludes that section 2.H.c. unambiguously provides that, unless the parties confirm that ACN intends to market and sell the Healthcare Building within thirty days following the Settlement Date, the procedure outlined in the first paragraph of section 2.H.c. shall control. Here, Dr. Yoder has alleged that "during the thirty days following the Settlement Date, the Parties did NOT confirm to Yoder that ACN intends to market and sell the Healthcare Building." Assuming the truth of this allegation, Dr. Yoder has successfully pleaded facts that require Dr. Verm to purchase his interest in Healthcare VII based on 36% of the appraised fair market value of the Healthcare Building as set forth in the first-quoted paragraph in section 2.H.c.[22]

Consequently, Judge Bledsoe denied Defendants' Rule 12(c) Motion and denied Plaintiff's Objections as moot.[23]

13.   In the current Motion, Plaintiff asserts that Judge Bledsoe's conclusions denying Defendants' Rule 12(c) Motion constitute a conclusive and final

---

[20] (Verified Compl. ¶ 8; Verm Defs. Br. Supp. Rule 12(c) Mot. 11–12; Defs.' 12(c) Order & Op. ¶ 16 (emphasis in original).)

[21] (Defs.' 12(c) Order & Op.)

[22] (Defs.' 12(c) Order & Op. ¶ 21 (emphasis in original).)

[23] (Defs.' 12(c) Order & Op. ¶ 22.)

determination as to the interpretation of section 2.H.c. of the Settlement Agreement and, therefore, that the doctrine of collateral estoppel prohibits Defendants from relitigating that conclusive determination. Hence, Plaintiff moves this Court to enter partial summary judgment on his contract claim requiring Defendant Verm to pay Plaintiff 36% of the appraised fair market value of the Healthcare Building per the terms of the Settlement Agreement and to dismiss Defendants' Counterclaim set forth in Paragraph 2(h) of Defendants' Prayer for Relief. Plaintiff contends he is entitled to a partial summary judgment ruling against Defendant Verm and LGE because the "undisputed material facts" show that ACN did not confirm its intention to market and sell the Healthcare Building within the thirty-day period set forth in section 2.H.c. of the Settlement Agreement.[24]

14. After full briefing, the Court held a hearing on Plaintiff's Motion on 18 February 2025, at which all parties were represented by counsel (the "Hearing").[25] The Motion is now ripe for resolution.

## II.

## LEGAL STANDARD

15. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In ruling on a motion

---

[24] (Pl's Mem. Supp. of Pl.'s Mot. Partial Summ. J., 2–4 [hereinafter, "Pl.'s Mem."], ECF No. 71.)

[25] (Am. Not. Hr'g, ECF No. 73.)

for summary judgment, the Court must consider the evidence in the light most favorable to the nonmoving party, drawing all inferences in the nonmoving party's favor. *See, e.g., Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018).

16. The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002). If the moving party carries this burden, the opposing party "may not rest upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins.,* 356 N.C. at 579. "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982) (quoting *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 374–75 (1981)).

17. "When the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578 (1985). The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370 (1976). However, when a party moves for summary judgment on a claim and properly supports all the essentials elements of that claim with evidence, and it plainly appears from the pleadings and evidence presented that

the movant is entitled to recover on the claim, summary judgment is proper. N.C. R. Civ. P. 56(c). *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

## III.

## ANALYSIS

18. Plaintiff has moved for partial summary judgment under Rule 56 on Count Four of Plaintiff's Verified Complaint and Defendants' Counterclaim set forth in Paragraph 2(h) of Defendants' Prayer for Relief. Plaintiff claims that no genuine issue of material fact exists and that he is entitled to partial summary judgment as a matter of law because (i) the language of section 2.H.c. of the Settlement Agreement is plain and unambiguous; (ii) section 2.H.c. required the parties to confirm during the thirty days following the Settlement Date that ACN intended to market and sell the Healthcare Building; (iii) the parties received confirmation of ACN's intent thirty-three days after the Settlement Date (and thus outside the bargained for and agreed upon thirty-day period), and therefore (iv) Defendants are obligated to pay Plaintiff 36% of the appraised fair market value of the Healthcare Building as set forth in the first-quoted paragraph of section 2.H.c.[26]

A. <u>The Court Is Bound by Judge Bledsoe's Interpretation of Section 2.H.c.</u>

19. The enforceability of settlement agreements is governed by the general principles of contract law. *Chappell v. Roth*, 353 N.C. 690, 692 (2001). Our Supreme Court has held that, "[a] contract which is plain and unambiguous on its face *will be interpreted by the Court as a matter of law.*" *Schenkel & Shultz, Inc. v. Hermon F. Fox*

---

[26] (Pl.'s Mem., *passim*.)

*& Assocs., P.C.*, 362 N.C. 269, 273 (2008) (emphasis added) (*citing Lane v. Scarborough*, 284 N.C. 407, 410 (1973)).  In his Order and Opinion resolving the Rule 12(c) Motion and the Objections, Judge Bledsoe's determined, as a matter of law, that section 2.H.c. of the Settlement Agreement is plain and unambiguous; that its thirty-day confirmation provision is material; and that the thirty-day provision of section 2.H.c. as written means that in the event the parties do not confirm that ACN intends to market and sell the Healthcare Building within thirty days of the Settlement Date, then the first paragraph of 2.H.c. controls, and Dr. Yoder shall be paid 36% of the appraised fair market value of the Healthcare Building and any cash held by Healthcare VII, after subtracting the amount of any outstanding debts of Healthcare VII in existence as of the date of the Settlement Agreement.[27]

20.    The Court and the parties are bound by Judge Bledsoe's interpretation of section 2.H.c. as a matter of law.  "The well established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501 (1972). *Accord Fox v. Johnson*, 243 N.C. App. 274, 282 (2015) (same).[28]  There are no genuine

---

[27] (Defs.' 12(c) Order & Op. ¶¶ 20-21.)

[28] Plaintiff's reliance on *Propst v. N.C. HHS*, 234 N.C. App. 165 (2014) to support his argument that the collateral estoppel doctrine prevents Defendants from relitigating the interpretation of section 2.H.c. is misplaced.  The *Propst* court observed that the doctrine applies when four specific requirements are met, and each element requires the existence of a "prior action."  *Id.* at 167−68 (citations omitted).  Here, the nonexistence of a prior action addressing the interpretation of section 2.H.c. renders collateral estoppel inapplicable.

issues of material fact regarding Judge Bledsoe's interpretation of the plain and unambiguous language of section 2.H.c., as written.

B. The Parties Did Not Receive Notice of ACN's Intent Within The Thirty-Day Period.

21. Significantly, Defendants agree that no genuine issue of material fact exists regarding whether the parties received confirmation within thirty days of the Settlement Date that ACN intended to market and sell the Healthcare Building, stating in their Reply Brief that: "The Verm Defendants agree with Dr. Yoder that there is no genuine issue of material fact as to when ACN gave notice of its intent to sell the Brevard Property: counsel for ACN communicated that intent to counsel for the Verm Defendants on 18 January 2023, and that email was forwarded to counsel for Dr. Yoder on 20 January 2023."[29] For good measure, Defendants also state to similar effect in their Memorandum in Opposition to Plaintiff's Motion: "On January 18, 2023, just 33 days after the Settlement Date, ANC's lawyer confirmed in writing that ANC did wish to proceed with marketing and selling the Brevard Property. Counterclaim, Exhibit 1. ANC's emails were then forwarded to counsel for Dr. Yoder on January 20, 2023. First Houti Affidavit, Exhibit D."[30]

22. Defendants' documentary evidence submitted in opposition to Plaintiff's Motion supports Defendants' statements in their briefing and confirms that the

---

[29] (Verm Defs.' Reply Mem. L. Supp. Mot. Partial Summ. J. on Pleadings or in the alt. Partial Summ. J. 1–2, ECF No. 45; Verm Defs.' Answer Affirmative Defenses & Countercls., Ex. 2.)

[30] (Defs' Mem. Opp'n Pl.'s Mot. for Partial Summ. J. 16 [hereinafter "Defs' Mem. Opp'n], ECF No. 74.)

parties did not receive ACN's confirmation of its intent to market and sell the Healthcare Building within the thirty-day window of section 2.H.c.:

a.  Defendants' counsel emailed counsel for ACN Transylvania Services Inc., Neil S. Olderman, on 10 January 2023, twenty-six days after the Court's approval of the Settlement Agreement, seeking to discuss if ACN may be interested in selling the Healthcare Building.[31]

b.  In a 10 January 2023 email, Olderman wrote that he was "out of town" but indicated his availability to talk with Defendants' counsel about the matter some time the week of 16 January 2023, or if not convenient he could talk the morning of Friday 13 January 2023 [still within the thirty-day window].[32]

c.  In an 18 January 2023 email from Olderman to Defendants' counsel, Olderman stated that, "ANC is willing to move forward with the marketing and sale of the MOB."[33]

d.  The thirtieth day following the approval of the Settlement Agreement on 15 December 2022 was 14 January 2023, meaning counsel Olderman's confirmation email on 18 January 2023 to Defendants' counsel stating that ACN was willing to move forward with the marketing and sale of the MOB occurred outside of the thirty-day window of section 2.H.c.[34]

---

[31] (Aff. of Jennifer Houti, dated 17 April 2024 [hereinafter "Houti Aff."], Ex. D, Email from JMH to Massagee, ECF No. 22.2.)

[32] (Houti Aff., Ex. D, Email from JMH to Massagee.)

[33] (Houti Aff., Ex. D, Email from JMH to Massagee.)

[34] (Houti Aff., Ex. D, Email from JMH to Massagee.)

23. At the Hearing, counsel for Defendants admitted that ACN's confirmation on 18 January 2023 of its intent to market and sell the Healthcare Building did not occur per the terms of section 2.H.c.:

> THE COURT: Well, let's see. Hold on. Okay, so you can see, don't you, that during the 30 days following the settlement agreement -- settlement date, the parties did not confirm that ANC intends to market and sell the healthcare building. Is that right?
>
> MR. FENNELL: No, the parties didn't feel like they needed confirmation.
>
> THE COURT: Well, I'm not asking you that. I'm asking you, did they get confirmation that ANC wanted to sell within that 30-day window as expressly stated in the document?
>
> MR. FENNELL: No, they did not.[35]

24. The undisputed evidence of record conclusively establishes that the parties did not receive ACN's confirmation of its intent to market and sell the Healthcare Building within thirty days following the Settlement Date. As a result, there remain no genuine issues of material fact and thus Plaintiff is entitled to judgment as a matter of law declaring that he is entitled to receive 36% of the appraised fair market value of the Healthcare Building as compensation for his membership interest in Healthcare VII as provided by section 2.H.c. of the Settlement Agreement.

C. Defendants' Other Arguments Are Unavailing

25. The conclusive determinations of Judge Bledsoe and this Court set forth above sufficiently resolve Plaintiff's Motion. Defendants' remaining arguments regarding materiality, the substantial performance doctrine, and whether

---

[35] (Feb. 18, 2025 Hr'g Tr. 19:21–20:7, ECF No. 85.)

substantial compliance with section 2.H.c. is a question for a jury[36] are impermissible and untimely collateral attacks on Judge Bledsoe's determinations in the Rule 12(c) Opinion. The Court, in the exercise of its discretion, summarily rejects all of them as unavailing, but addresses them below to facilitate any appellate review.

(i) Materiality of the Thirty-Day Confirmation Period

26. "[T]he most fundamental principle of contract construction [is] that the courts must give effect to the plain and unambiguous language of a contract." *Johnston Cnty. v. R.N. Rouse & Co., Inc.*, 331 N.C. 88, 95 (1992). If the terms of a contract are unambiguous, then the court "cannot look beyond the terms of the contract to determine the intentions of the parties." *Stovall v. Stovall*, 205 N.C. App. 405, 410 (2010) (quoting *Lynn v. Lynn*, 202 N.C. App. 423, 431 (2010)). Judge Bledsoe conclusively determined that the thirty-day confirmation period *is* material to the interpretation of section 2.H.c.'s plain and unambiguous language[37] and must be enforced as written. His materiality determination is binding on the Court and the parties. *See Calloway* and *Fox*, *supra*.

27. "In determining whether a given term of an agreement is "material," courts have looked to the purpose and nature of the agreement itself, and also to the term at issue to determine *whether the term was bargained for by one of the parties*." *McCarthy v. Hampton*, 2015 NCBC LEXIS 70, at * 16 (N.C. Super. Ct. July 1, 2015) (emphasis added and citations omitted). Moreover, where a term or condition of the

---

[36] (Defs.' Mem. Opp'n 7–17.)

[37] (12(c) Order & Op. ¶¶ 18–19.)

agreement is part of the consideration, it is material to the agreement. *Chappell*, 353 N.C. at 693–94 ("The 'mutually agreeable' release was part of the consideration, and hence, material to the settlement agreement.").

28. Section 2.H.c.'s thirty-day confirmation requirement is material for a host of reasons. It directly determines the method by which Dr. Yoder will be compensated for the purchase of his interest in Healthcare VII. It constituted part of the "consideration" for the parties' Settlement Agreement:

> C. Adequacy of Consideration: The Parties expressly acknowledge that the consideration set forth above is fair and adequate consideration for the covenants, undertakings, forbearances, and promises contained herein, and but for this agreement, each Party may not have been entitled to the same.[38]

Furthermore, the evidence of record demonstrates that Dr. Yoder "bargained for" the thirty-day requirement of section 2.H.c.:

a. The parties first circulated a copy of the draft Settlement Agreement on 25 September 2025 which did not contain the "thirty-day" language.[39]

b. The thirty-day language was first introduced via edits to the draft Settlement Agreement from Dr. Yoder's counsel on 9 November 2022.[40]

---

[38] (Settlement Agreement 3.)

[39] (2d Houti Aff., Ex. D, ECF No. 76.1.) These communications occur primarily between counsel for Defendants and counsel at Prince, Massagee, & Alexander, PLLC who represented Plaintiff at pertinent times during the parties' extensive, arms-length negotiations of the Settlement Agreement.

[40] (2d Houti Aff., Ex. I, ECF No. 76.6.)

c. The subsequent drafts of the Settlement Agreement did not remove the thirty-day language of section 2.H.c., which resulted in its inclusion in the finalized, signed, and court-approved Settlement Agreement over a month later.[41]

29. In reliance on statements that Dr. Verm proffers in his affidavit submitted in opposition to Plaintiff's Motion, Defendants further contend the thirty-day requirement of section 2.H.c. is not material because, "Dr. Verm never believed or intended the 30-day period to be a material term requiring strict compliance,"[42] and that "Dr. Yoder did not believe the time periods set forth in Section 2(H) of the settlement Agreement were material."[43] However, North Carolina law is clear that "[i]f the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract." *Walton v. City of Raleigh*, 342 N.C. 879, 881 (1996). Again, Judge Bledsoe conclusively determined section 2.H.c. is plain and unambiguous and, therefore, must be interpreted as written. "The parol evidence rule prohibits the admission of parol evidence to vary, add to, or contradict a written instrument intended to be the final integration of the transaction." *Lassiter v. Bank of N.C.*, 14 N.C. App. 264, 269 (2001).

30. As noted above, in determining whether a term is material, courts may look to the purpose and nature of the agreement itself, the term at issue to determine whether one of the parties expressly bargained for it, and whether the term is part of

---

[41] (2d Houti Aff., Exs. J, K, ECF Nos. 76.7., 76.8.)

[42] (Defs.' Mem. Opp'n 13.)

[43] (Defs.' Mem. Opp'n 14.)

the consideration for the agreement.  Here, each of these factors is present.  In section 1 of the Settlement Agreement ("Subject Matter and Purpose"), the Parties affirmed that the purpose "is to fully and completely set forth the terms of an agreement reached among the Parties to settle all disputes and controversies among them[.]"[44] In section 7 ("Advice of Counsel"), the Parties certified they read this Agreement, received a full explanation of the Agreement from their attorneys, understood it, and voluntarily entered into it.[45]  In section 13 ("Entire Agreement and Severability"), the Parties affirmed that the Settlement Agreement "constitute[d] the entire understanding among the Parties and merge[d][46] the full agreement reached among the Parties and all prior oral negotiations regarding the settlement of their disputes."[47]   The evidence of record shows that Dr. Yoder bargained for and accomplished inclusion of the thirty-day requirement of section 2.H.c.  The insertion of the thirty-day requirement into section 2.H.c. was part of the consideration for the Settlement Agreement.

31.    The final language of section 2.H.c. and the provisions of the Settlement Agreement were extensively negotiated at arms-length by sophisticated parties with

---

[44] (Settlement Agreement 1.)

[45] (Settlement Agreement 11.)

[46] Merger clauses "effectuate the policies of the Parol Evidence Rule; i.e., barring the admission of prior and contemporaneous negotiations on terms inconsistent with the terms of the writing. North Carolina recognizes the validity of merger clauses and has consistently upheld them." *Zinn v. Walker*, 87 N.C. App. 325, 333 (1987) (citations omitted).

[47] (Settlement Agreement 12.)

a history of adverse litigation amongst themselves. The Court declines to consider Dr. Verm's Affidavit to the extent it seeks consideration of pre-Settlement Date statements, beliefs, hearsay, and speculation about the alleged intent, beliefs, knowledge, or actions of Dr. Verm, Dr. Yoder, or ACN representatives that would vary, add to, or contradict terms of the Settlement Agreement.

32. Section 2.H.c.'s thirty-day confirmation period is material to the Settlement Agreement, and, thus, Defendants' materiality arguments are rejected as unavailing.

(ii) <u>The Substantial Performance Doctrine</u>

As a plenary matter, Judge Bledsoe already rejected as meritless Defendants' arguments that because the Settlement Agreement does not contain a "time is of the essence clause," the dates specified in the Settlement Agreement, and specifically the thirty-day confirmation requirement in section 2.H.c., are not considered material terms but rather serve as general guidelines.[48] This is so because that rule only applies to contracts involving the sale of real property: "As a general rule, the language of a contract should be interpreted as written; however, there is a well-established exception, the 'reasonable time to perform rule,' *that applies to contracts for the sale of real property.*" *Harris v. Stewart*, 193 N.C. App. 142, 146 (2008) (emphasis added). *Accord Kassel v. Rienth*, 289 N.C. App.173, 183 (2023) (same); *Cameron v. Newman*, 2025 N.C. App. LEXIS 27 at *15 (2025) (Table) (same). The instant action does not arise out of a dispute concerning a contract for the purchase and sale of real property. Similarly, Judge Bledsoe rejected as meritless Defendants'

---

[48] (Defs.' (12(c) Order & Op. ¶¶ 18–20.)

arguments that compliance with section 2.H.c.'s thirty-day confirmation requirement was not required:

> North Carolina's other "reasonable time" rule—that "if no time for the performance of an obligation is agreed upon by the parties, then the law prescribes that the act must be performed within a reasonable time," *Metals Corp. v. Weinstein*, 236 N.C. 558, 561 (1952) (cleaned up)—*does not apply here either because section 2.H.c. expressly supplies a thirty-day time period for the parties' performance.*[49]

33. Defendants did not raise the substantial performance doctrine at the Rule 12(c) stage. By raising that doctrine for the first time at the summary judgment stage, Defendants improperly seek to collaterally attack and end-run Judge Bledsoe's binding section 2.H.c. determinations. Defendants' attempt to relitigate their previously rejected "time is of the essence" and "reasonable time to perform rule" arguments[50] by dressing them up in different garb must fail. Defendants are not entitled to a second bite at the apple whatever the label used!

34. The substantial performance doctrine is an equitable one that permits a party to recover on a contract even though it fails to comply with the literal terms set forth in the contract. *Ricky Spoon Builders, Inc. v. Emgee LLC*, 286 N.C. App. 684, 690 (2022) (citation omitted). Defendants cite *Ricky Spoon* and the unpublished opinion of *Venable v. Grep Southeast LLC*, 2023 N.C. App. LEXIS 575, 290 N.C. App. 554 (Sept. 19, 2023) to support their previously rejected arguments that the reasonable time to perform rule is not limited to contracts for the purchase and sale

---

[49] (Defs.' 12(c) Order & Op. n. 29 (emphasis added).)

[50] (Defs.' Mem. Opp'n 7–10.)

of real property.[51] Both cases are easily distinguishable. The Court in *Ricky Spoon* enforced the terms of a settlement agreement that *did* contain a time is of the essence clause for the purchase and sale of real property, which indisputably is a clause not found in the parties' Settlement Agreement here. The Court in *Venable* enforced the settlement agreement where the plaintiff *accepted* a delinquent payment and the defendants paid the settlement amount due in full, rendering any breach immaterial and constituting a waiver; whereas, here, the dispute concerns Dr. Yoder's contract enforcement efforts resulting from Defendants' noncompliance with and nonperformance of the bargained for and agreed upon terms of the Settlement Agreement itself.

35. Notably, *Ricky Spoon* affirms the principle that unambiguous, bargained for, and agreed upon terms of a contract—such as the parties' clear and unambiguous thirty-day confirmation period of section 2.H.c.—must be enforced as written, observing:

> North Carolina courts recognize that "[f]reedom of contract is constitutionally guaranteed and provisions in private contracts, unless contrary to public policy or prohibited by statute, must be enforced as written." Accordingly, the doctrine of substantial performance *traditionally has not applied* where the parties, by the terms of their agreement, make it clear that only strict or complete performance will be satisfactory.

*Id.* at 691 (emphasis added and citations omitted).

36. The Court summarily rejects Defendants' substantial performance arguments as unavailing.

---

[51] (Defs.' Mem. Opp'n 9.)

(iii) <u>Substantial Performance is for a Jury</u>

37.     Defendants contend that the Court's adjudication of Plaintiff's Motion is premature because any doubt about the interpretation of section 2.H.c. is a question of fact to be resolved by a jury.[52]  First, no doubt exists about the correctness of Judge Bledsoe's interpretation of section 2.H.c.  Second, this belatedly raised argument is simply another improper effort by Defendants to collaterally attack and relitigate Judge Bledsoe's interpretation of section 2.H.c.  It is well settled law that the interpretation of a clear and unambiguous contract is a question of law for the Court.

38.     The Court rejects Defendant's substantial performance jury submission arguments as unavailing.

IV.

CONCLUSION

39.     **WHEREFORE**, based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion and **JUDGMENT** is hereby **ENTERED** for Plaintiff declaring that Plaintiff is entitled to 36% of the appraised value of the Healthcare Building and any cash held by Healthcare VII, after subtracting the amount of any outstanding debts of Healthcare VII in existence as of the date of the Settlement Agreement.

**SO ORDERED**, this the 6th day of May, 2025.

/s/ A. Todd Brown
A. Todd Brown
Special Superior Court Judge
 for Complex Business Cases

---

[52] (Defs.' Mem. Opp'n 16–17.)